IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,

                    Plaintiff,

          v.

MICHAEL McCLAIN, ANNE
PRAMAGGIORE, JOHN HOOKER,
AND JAY DOHERTY,

                    Defendants.

Case No. 20 CR 812

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Defendant Jay Doherty's Motion to Dismiss (Dkt. No. 44.) and Defendants Michael McClain, Anne Pramaggiore, John Hooker and Jay Doherty's Motion to Dismiss (Dkt. No. 45) are denied. Defendants' Motion for Bill of Particulars (Dkt. No. 56) is granted in part and denied in part. Defendants' Motion to Strike Surplusage from the Indictment (Dkt. No. 62) is denied but may be renewed prior to trial.

## I.  BACKGROUND

Defendants Michael McClain, Anne Pramaggiore, John Hooker, and Jay Doherty have been indicted on a charge of public corruption conspiracy involving Commonwealth Edison Company ("ComEd"), a subsidiary of the publicly traded Exelon Corporation, and Exelon Business Services, LLC, and public officials in the State of Illinois legislature (Count One). (Indict. ¶¶ 1—28, Dkt. No. 1.)

Defendant Michael McClain is a former House of Representatives official who subsequently served as a lobbyist for ComEd from approximately 1982 until 2019. (*Id.* at ¶1.) Defendant Anne Pramaggiore served ComEd as Chief Executive Officer from 2012 until 2018 and then worked as a senior executive affiliate from 2018 until October 2019. (*Id.*) Defendant John Hooker is a former executive of ComEd, who was hired as an external lobbyist for ComEd from 2012 until 2019. (*Id.*) Defendant Jay Doherty was the owner of Jay D. Doherty & Associates, which engaged in consulting services for ComEd from 2011 to 2019. (*Id.*) Count One alleges that the Defendants provided a series of benefits to a state public official over eight years, including jobs, vendor contracts and subcontracts, and monetary payments to associates of that official. (*Id.*)

In addition to the conspiracy charge, all Defendants have been charged with falsification of books and records in violation of 15 U.S.C. §§ 78m(b)(5) & 78ff(a) and 18 U.S.C 2 (Counts Three, Four, Seven, Nine), and public corruption in violation of 18 U.S.C. §§ 666(a)(2) & 2 (Count Eight). Defendants McClain and Pramaggiore have also been charged with three additional public corruption counts in violation of 18 U.S.C. §§ 666(a)(2) & 2 (Counts Two, Five, Six).

- 2 -

On May 20, 2021, Doherty moved to dismiss the public corruption counts against him (Count One in part and Count Eight). (Dkt. No. 44.) On June 1, 2021, all four Defendants moved to dismiss the public corruption counts (Count One in part and Counts Two, Five, Six, and Eight in their entirety). (Dkt. No. 45.) On September 10, 2021, Defendants moved for a bill of particulars. (Dkt. No. 56.) On September 22, 2021, Defendants moved to strike surplusage from the Indictment. (Dkt. No. 62.) The briefing on these issues having been concluded, the Court now considers the Motions.

## II.  **ANALYSIS**

Defendants' first two Motions are to dismiss the public corruption counts. Defendants present multiple legal challenges the public corruption charges, which the Court reviews below.

### A.  **Exception § 666(c)**

Defendant Doherty, individually and later joined by all Defendants, argues the Indictment is insufficient as the language set forth by the Government does not incorporate the exception to the criminal statue with specific enough references such that the jury could have determined whether the exception applied. Under Federal Rule of Criminal Procedure 7(c)(1), an indictment is sufficient if "it states the elements of the crime charged, informs the defendant of the nature of the charge so she may prepare a

defense, and enables the defendant to plead the judgment as a bar against future prosecutions for the same offense." *United States v. Agostino*, 132 F.3d 1183, 1189 (7th Cir. 1997). An indictment is generally sufficient when it uses the words of the statute to describe the offense and includes all the elements of the offense intending to be proscribed. *Id.*

Defendants acknowledge that Indictment tracks the language of the offense as required by the Federal rules. Specifically, the Indictment states that Defendants offered or agreed to give items of value, "jobs, contracts, and monetary payments," with the intent to influence an agent of the State of Illinois to provide regulation and statutes beneficial to ComEd. Doherty argues, however, that § 666(c) is also an essential element of the crime. The Indictment does not track the language of the exception set forth in § 666(c), and thus, according to Doherty, the Grand Jury was unable to consider whether the exception applied. Section 666(c) reads, "[t]his section does not apply to bona fide salary, wages, fees, or other compensation paid, or expenses paid or reimbursed, in the usual course of business." 18 U.S.C. § 666(c).

It is not the Government's duty to show that an indicted person did not fall within an exception. Challenges to the indictment on these grounds misplace the burden of proof. *McKelvey v. United States*, 260 U.S. 353, 357 (1922) ("[A]n indictment . . .

- 4 -

need not negative the matter of an exception made by a proviso or other distinct clause, whether in the same section or elsewhere, and that it is incumbent on one who relies on such an exception to set it up and establish it.") The exception should be used by Defendants as an affirmative defense at trial. *Id.*

In support of the contrary position, Doherty cites *United States v. Rooney*, 37 F.3d 847 (2d Cir. 1994). In *Rooney*, the Second Circuit reversed in part and vacated in part the conviction of a real estate developer, a private individual, involved in a private development project where he hired a private contractor who was connected to public funds through the federal agency who happened to be the lender for the project (the "FmHA"). *Id.* at 850. As the lead developer, Rooney was in charge of the FmHA funds, and used his access to funds to negotiate with a contractor on the scope and timing of a project. The Government prosecuted Rooney for public corruption. *Id.* at 853. The Second Circuit found that Rooney, as a private actor contracting with another private actor, had not "breached any duty he owed the government when he conditioned further loan requests and thus prompter payment upon the construction of a pond." *Id.* Notably absent from this case is any discussion that Rooney's allegations should have been dismissed at the indictment stage for failing to have the Government prove he was not part of the exception set forth in

§ 666(c). Indeed, the Second Circuit did not rely on § 666(c) as the main reasoning for their holding.

The Court, using common sense, finds there is sufficient information in the indictment to show that Doherty, Pramaggiore, Hooker, and McClain's actions fall within § 666. Unlike *Rooney*, where private parties engaged in negotiations on scope and timing of payment, here the Government has alleged that the four Defendants offered, or intended to offer, financial incentives as a bribe to a public official to influence state laws governing the public corporation that employed them. The fact that these incentives were laundered partially through jobs does not invalidate the indictment. A company cannot use its payroll line on its accounting ledger to circumvent all Government oversight of public corruption. *United States v. Whiteagle*, 759 F.3d 734, 755 (7th Cir. 2014) (affirming a conviction of a corrupt solicitation of a job for a legislator's cousin under 18 U.S.C. § 666(b).). While Defendants are entitled to use § 666(c) as an affirmative defense at trial, they are not entitled to dismissal at this stage based solely on their version of the facts.

### B. Connection between the Gratuity and the Action by Public Official A

Defendants next argue there is an insufficient nexus between the rewards provided to Public Official A and the actions taken by the General Assembly of Illinois. In *U.S. v. Sun-Diamond Growers*

- 6 -

*of California*, 526 U.S. 398, 404 (1999), the Supreme Court reviewed the extent to which a gratuity required a connection between the act and the thing of value conferred. The Supreme Court held that an illegal gratuity went beyond "a gratuity [made] because of his official position — perhaps, for example, to build a reservoir of goodwill that might ultimately affect one or more of a multitude of unspecified acts, now and in the future." *Id.* at 405. Instead, there must be a particular act referenced by the Government that was intended to be rewarded. *Id.* The Supreme Court enumerated several reasons for this holding. First, § 201(c) carefully defines and uses "official act" in its prohibition of illegal gratuities. As a result, "some particular official act [must] be identified and proved." *Id.* at 406. The Court also noted that the identification of the "official act" was necessary to prevent the presentation of symbolic gifts, such as "token gifts to the President based on his official position" and no other reason, from being criminal. *Id.* Finally, the Supreme Court noted that the prohibitions set forth in § 201(c) were "merely one strand of an intricate web of regulations, both administrative and criminal" regulating the conduct of federal employees. *Id.* at 409.

Defendants take *Sun-Diamond's* requirement on specificity and uses it to argue there must be a completeness of understanding between Public Official A and Defendants. However, the plain text

of the statute demonstrates there does not have to be proof that the agent of local government received the illegal gratuity with requisite intent, only that the person attempting to provide the illegal gratuity "corruptly gives, offers, or agrees to give" a thing of value. 18 U.S.C. § 666(a)(2); see also *United States v. Whiteagle*, 759 F.3d 734, 753 (7th Cir. 2014) ("It was not necessary for the government to prove as to these counts that [the legislator] actually received the bribes [under § 666(a)(2)]."). Defendants mistake these components of the law as having interchangeable standards. They do not.

Unlike § 201, neither the words nor the definition of "official act" are present in the language of the statute upon which Defendants have been indicted. Instead, § 666(a)(2) appears to rely on the word "corruptly" to differentiate between legal and illegal transfers of value between private individuals and officials. This change in language prevents the concerns presented by the Supreme Court in *Sun-Diamond* regarding publicly presented tokens or symbolic gifts. The final component of *Sun-Diamond's* holding, the presence of other laws and regulations governing federal officials, is not present here. On the contrary, § 666 was specifically enacted because of Congressional concerns that local and state agents of government could not be prosecuted for corruption. *See* S. Rep. No. 98-225 at 370 (1983), *infra*.

- 8 -

Keeping the text and posture of § 666 in mind, the Court finds the Government has met its burden in the indictment by presenting particular acts that Defendants intended to reward Public Official A. Specifically, the Government pointed to the General Assembly's passage of the Energy Infrastructure and Modernization Act ("EIMA") in 2011, Senate Bill 9 in 2013 (overturning an adverse interpretation of EIMA), and the Future Energy Jobs Act in 2016, as well as ComEd's "continuing interest in advancing legislation in the General Assembly favorable to its interests, and opposing legislation that was not consistent with its operational and financial success." (Indict. ¶ 1, Dkt. No. 2.)

Defendants argue that these were only attempts to curry favor with public officials and cast doubt on Public Official A's abilities to exert enough control over the General Assembly to create the necessary connection between the gratuities and the General Assembly's actions. The Seventh Circuit has reviewed applications of § 666 in the legislative context and found there to be a sufficient connection for an illegal gratuity, even in the absence of specific legislation. In *United States v. Gee*, 432 F.3d 713 (7th Cir. 2005), the Seventh Circuit affirmed a conviction where Gee, the defendant, used a non-profit organization to provide monies to Gary George, who at that time was the majority leader of Wisconsin's state senate. 432 F.3d at 714. On appeal, Gee argued

that because George was in the legislative and not the executive branch of Wisconsin's government, George "had no power or authority to influence; he did nothing to 'merit' a reward." *Id.* at 715.

The Seventh Circuit held that the legislative power "confers influence over executive decisions even when the legislature does not pass any particular law." *Id.* Here, the Government has pointed to three laws which were passed during the time of the alleged illegal gratuities, each of which were beneficial to ComEd. The Court finds this connection sufficient for the purposes of the indictment.

### C. *Quid Pro Quo* is not an Essential Element of § 666(a)(2)

In the second Motion to Dismiss, Defendants argue a *quid pro quo,* i.e., a concrete official act that directly correlates to the exchange of something of value, is an essential element of bribery offenses. Defendants argue that this encompasses the crime set forth in 18 U.S.C. § 666(a)(2) under which Defendants have been indicted. In support, Defendants cite to analogous Supreme Court case law prohibiting bribes to federal officials, 18 U.S.C. § 201.

Section 201 contains two subsections, each prohibiting a different crime and requiring a different level of intent to be proved by the Government. *Sun-Diamond*, 526 U.S. at 404. The federal bribery provision, 18 U.S.C. § 201(b)(1), states:

> Whoever directly or indirectly, corruptly gives, offers, or promises anything of value to any public official or person who has been selected to be a public official, or offers or promises any public official or any person who has been selected to be a public official to give anything of value to any other person or entity, with *intent* (a) *to influence* any official act . . .

(*emphasis added*.) The federal illegal gratuity provision, 18 U.S.C. §201(c)(1), states:

> Whoever otherwise than as provided by law for the proper discharge of official duty (a) directly or indirectly, gives, offers, or promises anything of value to any public official, former public official, or person selected to be a public official, *for or because of* any official act performed or to be performed by such public official, or person selected to be a public official.

(*emphasis added*.) As explained in *Sun-Diamond*, bribery requires the exchange of the "something of value" to be done with the intent either "to influence" or "[to be] influenced in the performance of any official act." *Id.* An illegal gratuity, on the other hand, in § 201(c), "may constitute merely a reward for some future act that the public official will take (and may already have determined to take), or for a past act that he has already taken." *Id.* at 405. The Supreme Court held that "only a bribe [§ 201(b)] requires proof of a *quid pro quo*." *Id.*

Defendants argue that the legislative purpose of enacting § 666 was to expand the narrow coverage of § 201(b) to apply to other public officials not employed by the federal government without otherwise changing the requirements of the statute. As a

- 11 -

result, Defendants argue that "hiring someone at the recommendation and request of a public official" such as a state legislator should be legal and "utterly routine" absent a *quid pro quo*. (Mem. at 8, Dkt. No. 46.) Defendant argues, essentially, that there is no equivalent prohibition against illegal gratuities for local and state officials, § 201(c), only bribery, § 201(b).

The pertinent text of 18 U.S.C. § 666(a)(2) reads as follows:

Whoever . . . corruptly gives, offers, or agrees to give anything of value to any person, with intent to influence or reward an agent of an organization or of a State . . . government . . . involving any of value of $5,000 or more, shall be fined under this title, imprisoned not more than 10 years, or both.

The text of § 666 encompasses both the word "influence" from the definition of bribery and "reward" from the definition of an illegal gratuity, mirroring the crimes of both § 201(b) and § 201(c) described in *Sun-Diamond*. This interpretation is supported by the context in which § 666 was passed by Congress. In the Senate Report regarding the passage of the Comprehensive Crime Control Act of 1983, 18 U.S.C. § 666 is explained as follows:

18 U.S.C. § 201 generally punishes corrupt payments to federal public officials, but there is some doubt as to whether or under what circumstances persons not employed by the Federal Government may be considered as a 'public official' under the definition in 18 U.S.C. § 201(a) as anyone 'acting for or on behalf of the United States, or any Department, Agency or branch of Government thereof, including the District of Columbia, in any official function.' The Courts of Appeals have divided on the question whether a person employed by a private organization receiving federal monies pursuant to a

- 12 -

> program is a 'public official' for purposes of Section
> 201. The issue is due to be decided soon by the Supreme
> Court, at least in the context of the particular HUD
> program involved in that case.

S. Rep. No. 98-225 at 370 (1983). By citing to "18 U.S.C. § 201 generally" as a punishment for "corrupt payments to federal public officials" and not § 201(b) or bribes specifically, the Senate Report supports a reading of the statute to encompass all subsections of § 201. *Id.*

The Seventh Circuit has reviewed the requirements of § 666(a)(2) and reached the same conclusion. *United States v. Agostino*, 132 F.3d 1183, 1190 (7th Cir. 1997) ("We decline to import an additional, specific *quid pro quo* requirement into the elements of § 666(a)(2)."); *United States v. Boender*, 649 F.3d 650 (7th Cir. 2011) ("Absent any reasons to reconsider our precedent — and indeed in light of the clear statutory text — we conclude that the government was not required to establish a specific *quid pro quo* of money in exchange for a legislative act."). In *Boender*, the Seventh Circuit specifically reviewed the textual differences between § 201(b) and § 666(a)(2) in the context of the Supreme Court's holding in *Sun-Diamond*. 649 F.3d at 654-55. The Seventh Circuit reaffirmed that § 666(a)(2) encompasses both illegal gratuities and bribery, such that a *quid pro quo* is sufficient, but not necessary. *Id.* at 655 (citing *Gee,* 432 F.3d at 714). The

Seventh Circuit reasoned that, "by its plain text, [§ 666(a)(2)] already covers both bribes and rewards." *Id.*

The First Circuit more recently reached the opposite conclusion in *United States v. Fernandez*, 722 F.3d 1 (1st Cir. 2013). The First Circuit noted that § 666 was altered in response to doubt as to whether public officials were covered under § 201 and then compared the textual differences between the two statutes. The First Circuit highlighted "[t]wo changes to § 666 effected by the CLPTA" that were "noteworthy." *Id.* at 21. First, the statute was altered to include "with intent to influence or reward," and second, the addition of the word "corruptly." *Id.* at 21–22. The First Circuit used these insertions to conclude that the insertion of the word "reward" was *not* meant to mirror the language in § 201(c) or otherwise referencing an illegal gratuity, and instead was intended to reference the timing of the bribe. The First Circuit gave more weight to the argument that the insertion of the word "corruptly" caused the text of § 666(a)(2) to mirror the language of bribery in § 201(b) and found that its insertion required a limitation of the statute to the crime of bribery. *Id.*

The Court respectfully disagrees with the First Circuit's conclusion. As explained in the partial concurrence to *Fernandez*, this interpretation would "violate the requirement that we are to give effect to every word of a statute." *Id.* at 40 (citing *Ransom*

*v. FIA Card Servs., N.A.*, 562 U.S. 61, 70 (2011)) (Howard, C.J., concurring in part). The Court finds that the insertion of "corruptly" limit the type of transactions prohibited, i.e., corrupt ones, not to further limit the type of corrupt transactions to only bribes.

As referenced in the Senate Report, Comprehensive Crime Control Act of 1983 was passed while *Dixson v. United States*, 465 U.S. 482 (1984), was pending before the Supreme Court. At the time, there was uncertainty about whether local and state officials could be "public official" who performs "official acts." 18 U.S.C. §§ 201(a)(1), (3). As a result, unlike § 201, there is no definition or reference to a "public official" or an "official act" in the Comprehensive Crime Control Act. Without the insertion of "corruptly," the Act would have criminalized an expansive set of acts, including symbolic gifts as 'rewards.' The Court finds that the word "corruptly" cabins the scope of the law to illegal conduct but does not further limit the scope to bribery or to crimes involving *quid pro quo*.

Relying on Seventh Circuit precedent, the Court finds that neither the plain text of the statute nor the explanation in the Senate Report support Defendants' position, and the Court finds that a *quid pro quo* is not an essential element of the crimes set forth in § 666(a)(2).

### D.  Vagueness and the Rule of Lenity

Defendants next argue that § 666 is unconstitutionally vague. A statute can be unconstitutionally vague in two respects. A statute may be void for vagueness if it fails to provide a "fair warning" as to the prohibited conduct. *Karlin v. Foust*, 188 F.3d 446, 458 (7th Cir. 1999). Additionally, a statute that does not "contain an explicit and ascendable standard" would allow the executive branch to engage in "arbitrary and discriminatory" enforcement and thus would be unconstitutionally vague. *Id.* at 459. Defendants argue that § 666(a)(2) fails both standards.

In support, Defendants cite to *United States v. Thompson*, 484 F.3d 877 (7th Cir. 2007). There, Defendant Georgia Thompson, a section chief for Wisconsin's Bureau of Procurement, selected the lowest bidder even though other members of the selection group rated its rivals more highly. *Id.* at 878. A jury convicted her of violating 18 U.S.C. § 666 and § 1341 on the prosecution's theory that it was politically motivated departure from state administrative rules. *Id.* The Seventh Circuit considered the word "misapplies" within § 666(a)(1)(A), which punishes "[w]hoever . . . intentionally misapplies property" and found that the word could encompass a broader or a narrower meaning. *Id.* at 881. Finding the broad reading would "turn [] all (or a goodly fraction of) state-law errors or political considerations in state

- 16 -

procurement into federal crimes," the Seventh Circuit chose instead to limit § 666(a)(1)(A) to "theft, extortion, bribery, and similarly corrupt acts." *Id.* The Seventh Circuit stated that "[a]n error — even a deliberate one, in which the employee winks at the rules in order to help out someone he believes deserving but barely over the eligibility threshold — is a civil rather than a criminal transgression." *Id.*

The Court finds this case inapplicable to Defendants' current indictment. First, the case does not stand for the proposition that the Court should invalidate the entirety of § 666 because of overbroad language. At most, the Court reads this precedent as guidance that it should consider whether or not to interpret a narrow reading of § 666(a)(2) as a counterpart to § 666(a)(1). However, unlike *Thompson*, the Government is not alleging a misapplication or mistake of administrative rules that run afoul of the broadest interpretation of § 666. Defendants are alleged to have systematically provided things of value through almost a decade in an attempt to illegally reward a state legislator. Defendants do not point to a word where the narrow meaning in § 666(a)(2) which would exclude these acts from criminal conduct.

Defendants repeat the argument that, absent a *quid pro quo*, the government could prosecute any form of gratuity. Because the Court reads the "corruptly" as a limiting factor of the statute,

the concerns regarding both the fair warning and the prosecutorial standards are alleviated. *See* section 3, *supra.* The Court does not find the language to be unconstitutionally vague. Because there is no doubt regarding the statute's intended scope, the Court declines to apply the rule of lenity. *See, e.g., Shaw v. United States*, 137 S. Ct. 462, 469, 196 L. Ed. 2d 373 (2016) ("The statute is clear enough that we need not rely on the rule of lenity.")

### E. Double Jeopardy

Under Seventh Circuit case law and as upheld by this Court in this opinion, § 666(a)(2) a jury could convict Defendants that have either the "intent to influence *or* reward" an agent of state government. 18 U.S.C. § 666(a)(2)(emphasis added). This is reflected in the sentencing guidelines, which are applied differently depending on whether the underlying crime was "more akin" to bribery or to providing an illegal gratuity. *United States v. Anderson*, 517 F.3d 953, 961 (7th Cir. 2008) ("Convictions under § 666 and § 1343 call for the application of either § 2C1.1 or § 2C1.2, whichever is most appropriate or most specifically covers the offense conduct."). Defendants argue that the "or" present in the statute creates two distinct offenses, and the government's current charge, which alleges both "influence and reward" creates a duplicitous count.

Defendants state double jeopardy jurisprudence incorrectly. "An indictment is duplicitous if it charges two or more offenses in a single count." *United States v. Pansier*, 576 F.3d 726, 734 (7th Cir. 2009). Here, however, § 666(a)(2) is a single offense, which could be committed through either action. The fact that the government alleged multiple means by which § 666(a)(2) was committed by Defendants does not make it duplicitous. FED. R. CRIM. P. 7(c)(1) ("A count may allege that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means.") Defendants are not exempt from one theory or the other because there is evidence that both means were committed in violation of the offense.

Defendants' arguments regarding the differences at sentencing are similarly incorrect. Generally, after a conviction, district courts will determine at sentencing which guidelines are appropriate. And "the Sentencing Commission often recommends different punishments for defendants who commit the same offense in different ways." *United States v. Donagher*, 520 F.Supp.3d 1034, 1055 (N.D. Ill. 2021). The Court denies the Motion to find the 'bribery' and the 'reward' components to be separate offenses on the basis of disparate sentencing guidelines.

### III.   <u>MOTION FOR A BILL OF PARTICULARS</u>

Defendants next motion for a bill of particulars under Federal Rule of Criminal Procedure 7(f). Such motion is "at the direction of the trial court." *United States v. Fassnacht*, 332 F.3d 440, 446 (7th Cir. 2003). A bill of particulars is appropriate when the indictment fails to sufficiently apprise the defendant of the offending conduct, and additional information is needed in order for the defendant to be on notice prior to trial. *Id.* An indictment that sets forth the elements of each offense charge, the time and place of the conduct, and a citation to the relevant statutes violated satisfies this requirement. *United States v. Kendall*, 665 F.2d 126, 134 (7th Cir. 1981). In addition to the clarity of the indictment, the district court also considers the complexity of the charges and the availability of discovery to the defendant. *United States v. Vasquez-Ruiz*, 136 F.Supp.2d 941, 943 (N.D. Ill. 2001).

Defendants argue that, thus far, the Government has only provided examples of the crimes alleged and have refused to provide the entire universe of information that might be provided against them. Given the eight-year time period and the complexity of the alleged scheme, Defendants argue that a particularized list is essential for proper notice prior to trial. Specifically, Defendants request four categories of information beyond the

indictment and the provided discovery: (1) each individual who was illegally hired, (2) every document falsified, (3) an enumeration of each false representation and its corresponding count, and (4) each transaction that Defendants were attempting to influence or reward.

The Court has already reviewed the Indictment, Section II, *supra,* and found it sufficiently articulated the elements charged. Defendants have been indicted of intending to influence or reward Public Official A through providing jobs, vendor contracts and monetary payments. The scheme alleged covers eight years of conduct of actors working in a large public corporation, so the Court considers each category request of particulars to determine if Defendants have sufficiently information to be on notice for trial.

The Government states at the outset that it has provided "voluminous discovery," including "emails, contracts, recorded conversations, interview reports, [] grand jury testimony" and "indices with each production to aid defendants' review of documents." (Resp. at 8—9, Dkt. No. 75.) For a complex, multi-year trial, this could either illuminate the alleged wrongful conduct or lose Defendants in a digital maze of document production rooms.

Defendants first ask for a list of each individual who was hired or otherwise retained with the intent to influence or reward Public Official A. Contrary to Defendants' characterization, the

Government does not allege that every hiring decision made by ComEd over eight years could be brought as a corrupt hiring at trial. The only decisions alleged by the Government as violating the anticorruption laws are ones where the hiring request was made through the former legislator Defendant McClain. The Government also provided specific examples in the Indictment on how the scheme worked with respect to four hiring decisions, one law firm retention, one board appointment, and one preferential intern program.

Defendants argue that examples alone are insufficient. However, given the provided discovery and the alleged scheme where hiring decisions were requested through a single individual and personally worked on by one or more of the other defendants, the Court finds that the Government has provided enough specificity with respect to the individual hiring decisions. Ultimately, Defendants are in the best position to know which individuals and entities they directed the company to retain based on McClain's recommendations beyond the six individual instances and one program alleged.

Defendants also request a specific list of false statements they allegedly made over the course of the eight-year scheme, and for the Government to provide the corresponding Count associated with each false statement. The Government points out that the

Indictment specifies the time of each of the individual counts within a one- to three-month period, and that it identified some specific documents produced in discovery that contained the false statements. By identifying the date, the Government has provided sufficient notice as to the individual counts. The Court finds less specificity in the conspiracy count. The Government has not provided any notice as to the nature of the false statements for the ongoing, eight-year scheme alleged in Count One. For a complex eight-year conspiracy at a public company, alleging general concealment and false statements, even with some identified example documents, does not allow Defendants to prepare for trial. The Indictment sets these false statements in general terms, alleging Defendants "created and caused the creation of false contracts, invoices and other books and records to disguise the true nature of certain of the payments and to circumvent internal controls." (Indict. ¶ 3.) Because "[t]here is a good chance that the government will offer at trial false statements and bad acts that are within the scope of one or more of these general allegations," the Court grants Defendants' Motion for Particularization as to the false statements requested for Count One. *United States v. Dekelaita*, No. 14 CR 497, 2015 WL 13688965, at *3 (N.D. Ill. Mar. 23, 2015). The Court denies the Motion as to Counts Two, Three, Four, Five, Six, Seven, Eight and Nine.

Finally, Defendants ask for a particularization as to the acts, or lack thereof, which Defendants intended to influence or reward. The Government has already provided specific legislation that was passed during the conspiracy and favorable to ComEd. As explained in *Gee*, power over the legislative branch can be shown through both legislation and assumption that legislators have the power to prevent the passage of unfavorable legislation. 432 F.3d at 715. The Court does not think that Defendants require further particularization.

### IV.   MOTION TO STRIKE SURPLUSAGE

Finally, Defendants move to remove the surplusage in the indictment under Federal Rule of Criminal Procedure 7(d). Defendants argue that the paragraphs describing the favorable legislation passed in the State of Illinois legislature is too attenuated to the rest of the indictment and may be prejudicial to the jury. The Court finds the Motion to be premature prior to the Government's presentation of its case-in-chief. The Court denies the Motion, but Defendants may renew it prior to the jury receiving a copy of the Indictment.

### V.   CONCLUSION

For the reasons stated herein, the Court denies Defendant Jay Doherty's Motion to Dismiss and Defendants Michael McClain, Anne Pramaggiore, John Hooker and Jay Doherty's Motion to Dismiss. (Dkt.

Nos. 44, 45.) The Court grants in part and denies in part Defendants' Motion for Bill of Particulars. (Dkt. No. 56.) The Government is directed to provide Defendants, no less than sixty (60) days prior to trial, a Bill of Particulars identifying the false statements associated with Count One of the Indictment. The Court denies Defendants' Motion to Strike Surplusage from the Indictment, (Dkt. No. 62) but Defendants may renew the motion prior to trial.

**IT IS SO ORDERED.**

_____
    Harry D. Leinenweber, Judge
    United States District Court

Dated: 2/17/2022

- 25 -