UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA | ) | | |
| | ) | | |
| v. | ) | No. | 20 CR 812 |
| | ) | Hon. | Harry D. Leinenweber |
| MICHAEL McCLAIN, | ) | | |
| ANNE PRAMAGGIORE, | ) | | |
| JOHN HOOKER, and | ) | | |
| JAY DOHERTY | ) | | |

## BILL OF PARTICULARS

The UNITED STATES OF AMERICA, by JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, hereby submits the following bill of particulars.

Count One of the indictment charges defendants with conspiring to violate 18 U.S.C. § 666(a)(1)(b) (corruptly soliciting things of value), 18 U.S.C. § 666(a)(2) (corruptly offering things of value), and 15 U.S.C. §§ 78m(b)(5), 78ff(a) (circumventing accounting controls and falsifying Exelon's and Commonwealth Edison's books and records), all in violation of 18 U.S.C. §§ 371 and 2. The Court ordered the government to file a bill of particulars identifying the false statements associated with Count One of the indictment. R. 83 at 23, 25.

As relevant to the false books and records allegations, defendants arranged for Commonwealth Edison ("ComEd") to hire Individuals 13W-1, 13W-2, 13W-3, 23W-1, and FR-1 (referred to herein as "the subcontractors")[1] at the request of former

---

[1] The defendants are aware of the identities of these individuals from discovery.

Speaker of the Illinois House of Representatives Michael J. Madigan, corruptly intending to influence and reward Speaker Madigan in connection with legislation before the Illinois General Assembly. Defendants arranged for these individuals to receive regular payments from ComEd through Doherty's firm, JDDA, and through other intermediary firms. Defendants caused false records to be created to conceal the payments to the subcontractors in Exelon's and ComEd's books and records.

The government expects the evidence to show that the defendants made or caused to be made the false statements described below as part of the conspiracy to falsify Exelon's and ComEd's books and records alleged in Count One. The statements described below were generally false for the same underlying reasons: they (i) falsely identified the recipients of payments made by the company; and (ii) falsely identified the reason for the payments, by making them to appear to be for arms' length and legitimate commercial services, when in fact the payments were made in return for little or no work performed and were intended to corruptly influence and reward Speaker Michael Madigan. The government reserves its rights to introduce additional false statements at trial.[2]

---

[2] The false statements described herein do not include all false statements made in connection with the conspiracy, such as false statements that are not part of the alleged books and records violations. As an example, some of the subcontractors submitted invoices containing the same types of false information to defendant Doherty and the other intermediaries, which reflected that the subcontractors performed legitimate work for ComEd and Doherty when in fact they did not and were actually hired to corruptly influence and reward Madigan. A few illustrative examples can be found at GJ_049-000094; GJ_049-000096; GJ_049-000132; GJ_079-000235; DOHERTY0004015; DOHERTY0004577; DOHERTY0004577; DOHERTY0000052; DOHERTY0004281; SW_035-000375; SW_031-000456; DOHERTY0001109; DOHERTY0004281; 14GJ393_0000253, 14GJ393_0000254. Similarly, Intermediary 3 sent Individual FR-1's son a contract that falsely represented that his firm "desires to engage the services of Consultant for the purposes of working [o]n the ComEd account," that Individual FR-1 would "[p]rovide Illinois political and legislative analysis for

1. **JDDA**

This section summarizes false statements made in connection with payments to Jay D. Doherty & Associates (JDDA) that are part of the alleged books and records violations.

a. **Invoices**

From September 2011 through 2019, defendant Jay Doherty caused invoices to be submitted to ComEd for payment, which ComEd processed internally. Each of those invoices falsely stated that the invoiced amount was for Doherty's firm, and more specifically was compensation for "Public Affairs and Government Affairs Counsel in connection with the Mayor's Office, City of Chicago Elected Representatives and the Department of Environment." Each invoice was false in that it falsely described the intended ultimate recipients of the payments, falsely described the reason for the payments to the ultimate recipients, and omitted that Doherty would make payments to Individuals 13W-1, 13W-2, 13W-3, and 23W-1, who did little or no work for Doherty's firm during each period covered by each invoice. A list of the false invoices is below:

| Description | Beginning Bates[3] |
| --- | --- |
| JDDA Invoice 2011.10 | EXE00000512 |
| JDDA Invoice 2011.11 | EXE00000237 |
| JDDA Invoice 2011.12 | EXE00000387 |
| JDDA Invoice 2012.01 | EXE00000165 |

ComEd," and "[w]ork on the ComEd account in legislative and regulatory matters before the Illinois General Assembly and other Illinois government bodies." [INTERMEDIARY 3 NAME REDACTED] _001-000049-51. These are illustrative examples only.

[3] Unless otherwise noted, the government lists the beginning bates number of each document it intends to introduce at trial.

| | |
|---|---|
| JDDA Invoice 2012.02 | EXE00000221 |
| JDDA Invoice 2012.03 | EXE00000110 |
| JDDA Invoice 2012.04 | EXE00000128 |
| JDDA Invoice 2012.05 | EXE00000355 |
| JDDA Invoice 2012.06 | EXE00000316 |
| JDDA Invoice 2012.07 | EXE00000309 |
| JDDA Invoice 2012.08 | EXE00000167 |
| JDDA Invoice 2012.09 | EXE00000210 |
| JDDA Invoice 2012.10 | EXE00000403 |
| JDDA Invoice 2012.11 | EXE00000078 |
| JDDA Invoice 2012.12 | EXE00000462 |
| JDDA Invoice 2013.01 | EXE00000181 |
| JDDA Invoice 2013.02 | EXE00000498 |
| JDDA Invoice 2013.03 | EXE00000260 |
| JDDA Invoice 2013.04 | EXE00000196 |
| JDDA Invoice 2013.05 | EXE00000411 |
| JDDA Invoice 2013.06 | EXE00000290 |
| JDDA Invoice 2013.07 | EXE00000441 |
| JDDA Invoice 2013.08 | EXE00000351 |
| JDDA Invoice 2013.09 | EXE00000070 |
| JDDA Invoice 2013.10 | EXE00000156 |
| JDDA Invoice 2013.11 | EXE00000399 |
| JDDA Invoice 2013.12 | EXE00000338 |
| JDDA Invoice 2014.01 | EXE00000397 |
| JDDA Invoice 2014.02 | EXE00000530 |
| JDDA Invoice 2014.03 | EXE00000235 |
| JDDA Invoice 2014.04 | EXE00000082 |
| JDDA Invoice 2014.05 | EXE00000334 |
| JDDA Invoice 2014.06 | EXE00000508 |
| JDDA Invoice 2014.07 | EXE00000249 |
| JDDA Invoice 2014.08 | EXE00000450 |
| JDDA Invoice 2014.09 | EXE00000545 |
| JDDA Invoice 2014.10 | EXE00000496 |
| JDDA Invoice 2014.11 | EXE00000322 |
| JDDA Invoice 2014.12 | EXE00000225 |
| JDDA Invoice 2015.01 | EXE00000553 |
| JDDA Invoice 2015.02 | EXE00000124 |
| JDDA Invoice 2015.03 | EXE00000171 |
| JDDA Invoice 2015.04 | EXE00000468 |
| JDDA Invoice 2015.05 | EXE00000194 |
| JDDA Invoice 2015.06 | EXE00000395 |
| JDDA Invoice 2015.07 | EXE00000116 |
| JDDA Invoice 2015.08 | EXE00000219 |
| JDDA Invoice 2015.09 | EXE00000452 |
| JDDA Invoice 2015.10 | EXE00000474 |
| JDDA Invoice 2015.11 | EXE00000431 |
| JDDA Invoice 2015.12 | EXE00000138 |

| | |
|---|---|
| JDDA Invoice 2016.01 | EXE00005023 |
| JDDA Invoice 2016.02 | EXE00000253 |
| JDDA Invoice 2016.03 | EXE00000524 |
| JDDA Invoice 2016.04 | EXE00000275 |
| JDDA Invoice 2016.05 | EXE00000328 |
| JDDA Invoice 2016.06 | EXE00000494 |
| JDDA Invoice 2016.07 | EXE00000421 |
| JDDA Invoice 2016.08 | EXE00000307 |
| JDDA Invoice 2016.09 | EXE00000087 |
| JDDA Invoice 2016.10 | EXE00000265 |
| JDDA Invoice 2016.11 | EXE00000191 |
| JDDA Invoice 2016.12 | EXE00000189 |
| JDDA Invoice 2017.01 | EXE00000288 |
| JDDA Invoice 2017.02 | EXE00370760 |
| JDDA Invoice 2017.03 | EXE00000273 |
| JDDA Invoice 2017.04 | EXE00370749 |
| JDDA Invoice 2017.05 | EXE00000227 |
| JDDA Invoice 2017.06 | EXE00000204 |
| JDDA Invoice 2017.07 | EXE00370729 |
| JDDA Invoice 2017.08 | EXE00369707 |
| JDDA Invoice 2017.09 | EXE00000212 |
| JDDA Invoice 2017.10 | EXE00000439 |
| JDDA Invoice 2017.11 | EXE00369677 |
| JDDA Invoice 2017.12 | EXE00369580 |
| JDDA Invoice 2018.01 | EXE00370531 |
| JDDA Invoice 2018.02 | EXE00000429 |
| JDDA Invoice 2018.03 | EXE00369654 |
| JDDA Invoice 2018.04 | EXE00369644 |
| JDDA Invoice 2018.05 | EXE00369642 |
| JDDA Invoice 2018.06 | EXE00000286 |
| JDDA Invoice 2018.07 | EXE00369636 |
| JDDA Invoice 2018.08 | EXE00369634 |
| JDDA Invoice 2018.09 | EXE00000282 |
| JDDA Invoice 2018.10 | EXE00369632 |
| JDDA Invoice 2018.11 | EXE00369630 |
| JDDA Invoice 2018.12 | EXE00369626 |
| JDDA Invoice 2019.01 | EXE00001614 |
| JDDA Invoice 2019.01 | EXE00369620 |
| JDDA Invoice 2019.02 | EXE00001616 |
| JDDA Invoice 2019.02 | EXE00369618 |
| JDDA Invoice 2019.03 | EXE00001613 |
| JDDA Invoice 2019.03 | EXE00369616 |
| JDDA Invoice 2019.04 | EXE00001615 |
| JDDA Invoice 2019.05 | EXE00000107 |
| JDDA Invoice 2019.06 | EXE01254959 |
| JDDA Invoice 2019.07 | EXE01254956 |
| JDDA Invoice 2019.08 | EXE01254953 |

In addition, Doherty invoiced amounts in excess of his monthly contractual rate for certain months. The invoices associated with those months falsely stated that the additional amounts invoiced related to additional "services rendered" or "additional scope of services." For example, Doherty submitted an invoice for $30,000 to Exelon Business Services Co. dated September 15, 2011, which falsely claimed that $5,000 was for "Services rendered 8/1/11 – 9/1/11." EXE00000512. Doherty submitted an invoice for $42,500 to Exelon Business Services Co. dated September 1, 2018, which falsely claimed that $5,000 was for "additional scope of services." EXE00000282; DOHERTY0000198. These invoices did not state that the payments would actually be passed on to subcontractors who were hired to corruptly influence and reward Michael Madigan and who did little or no work for Doherty's firm. A list of these false invoices is below:

| Description | Beginning Bates |
|---|---|
| JDDA Invoice dated 09/15/11 | EXE00000512 |
| JDDA Invoice dated 02/15/12 | EXE00000110 |
| JDDA Invoice dated 02/15/14 | EXE00000235 |
| JDDA Invoice dated 09/01/18 | EXE00000282 |

b. **Asset Suite Records**

Payments to consultants were tracked in Exelon's and ComEd's Asset Suite management system, and information from that system was automatically incorporated into the company's general ledger on a daily basis.

From August 2011 to 2019, defendant Anne Pramaggiore and others approved payments to JDDA in the company's Asset Suite management system, which entries contained false and misleading information. Specifically, entries into the Asset Suite management system falsely indicated that the payments (1) were intended for "Jay

Doherty & Associates" (in the "Description" entry), (2) were connected to the associated invoice submitted by Doherty (in the "Invoice Number" entry), which falsely described the nature of the payment, and (3) pertained to a legitimate commercial transaction (for example, the "SubAcct" entry listed "515060" and the "Detail Cost Element" entry listed "3T," which made it appear that the payment was for professional work, namely, a consultant voucher). These records were false in that they did not reflect that a portion of the payments were in truth intended for subcontractors, who did little or no work for Doherty's firm, and they falsely stated the reason for these payments. These records are listed below.

| Description | Beginning Bates |
|---|---|
| 2011 Vouchers for JDDA | EXE01256228 |
| 2012 Vouchers for JDDA | EXE01256379 |
| 2013 Vouchers for JDDA | EXE01256276 |
| 2014 Vouchers for JDDA | EXE01256252 |
| 2015 Vouchers for JDDA | EXE01256300 |
| 2016 Vouchers for JDDA | EXE01256352 |
| 2017 Vouchers for JDDA | EXE01256403 |
| 2018 Vouchers for JDDA | EXE01256324 |
| 2019 Vouchers for JDDA | EXE01256433 |

The government may also seek to introduce individual monthly payment records from ComEd's Asset Suite management system related to JDDA, including but not limited to EXE00000899, EXE00000899, and EXE00001214.

c. **Contracts**

i. **2013**

Jay Doherty signed a contract dated January 1, 2013, which falsely stated that JDDA was retained "to promote Commonwealth Edison and its business matters," and to "develop, execute and manage a communications program: (i) that facilities

[sic] the timely and effective communication of information between Commonwealth Edison and the Ward Organizations that present [sic] the City of Chicago's fifty wards; (ii) that promotes positive relations between Commonwealth Edison and the Ward Organizations and those Chicago residents the Ward Organizations serve; (iii) and coordinate communications efforts with the Mayor's Office." DOHERTY0000050. This contract was false and misleading because, in fact, a substantial portion of ComEd's $31,000 monthly payment to JDDA was destined for the subcontractors, who did little or no work for Doherty's firm as discussed above, and the contract falsely stated the reason for these payments.

### ii. <u>2017</u>

Jay Doherty signed a contract dated January 3, 2017, which falsely stated that JDDA was retained "to promote Commonwealth Edison and its business matters," and to "develop execute and manage its Government Relations Presence. Government Relations will be provided in connection with the City of Chicago, including the Mayor's Office, Department Agency heads and Aldermanic offices; Cook County, including Board President's Office and Department Agency heads; and State of Illinois, including the Governor's Office and State Agency heads." EXE00158727; *see also* EXE00005505 (contract requisition form). This was false and misleading because, in fact, a substantial portion of each month's payment from ComEd was destined for the subcontractors as discussed above, and the contract falsely stated the reason for these payments.

Doherty also signed a contract dated February 15, 2017, which falsely stated that JDDA was retained to "advise ComEd on legislative issues affecting ComEd and its subsidiaries, work with appropriate State and Local Committees, leadership, and individual members to facilitate ComEd's agenda," among other services, when in fact a substantial portion of JDDA's monthly payment was destined for the subcontractors, and the contract falsely stated the reasons for these payments. DOHERTY0002559.

### iii. **2018**

Doherty signed a contract on February 28, 2018, which falsely suggested that all the money paid under the contract effective January 1, 2018 was to "advise ComEd on legislative issues affecting ComEd and its subsidiaries, work with appropriate State and Local Committees, leadership, and individual members to facilitate ComEd's agenda," among other services, when in fact a substantial portion was destined for the subcontractors. GALLEGOS_001-0000107; *see also* EXE00005512-16.

On June 29, 2018, Doherty signed a contract amendment increasing monthly payments to JDDA by $5,000 per month, to $37,500 per month. That contract amendment falsely stated that JDDA was retained for June 1, 2018 to January 13, 2019 to provide "Government and Public Affairs Professional Services for the following: City Council, Department heads and Mayor's Office, plus expanded role with Cook County Board President's office and Cook County Commissioners Department Heads." DOHERTY0000049. This amendment was false and misleading

because the amendment was signed in order to provide for the monthly payment of $5,000 to Individual 23W-1, who did no work for Doherty as to the matters described in the amendment. The amendment thus falsely stated the reason for this payment.

#### iv. **2019**

Jay Doherty signed a contract dated March 11, 2019, which falsely suggested that all the money paid under the contract was to "advise ComEd on legislative issues affecting ComEd and its subsidiaries, work with appropriate State and Local Committees, leadership, and individual members to facilitate ComEd's agenda," among other services. EXE0000261; *see also* EXE00005517-25 (contract requisition form). This was false because the payments were for the illicit purposes described above.

### d. **Single Source Justifications**

#### i. **2017**

On January 23, 2017, Anne Pramaggiore signed a single source justification related to JDDA's contract, stating that Doherty's firm would be paid $429,400 because of his "unique insight & perspective to promote ComEd and its business matters to further develop, execute and manage its Government Relations presence." EXE00002350; EXE00005508; *see also* EXE00005505 (contract requisition form). This single source justification further falsely stated that JDDA's "scope of work" included: "to promote Commonwealth Edison and its business matters" and "to further develop, execute and manage its Government Relations presence," and that "Government relations will be provided in connection with the City of Chicago,

including the Mayors Office, Department Agency heads and Aldermanic offices; Cook County, including Board President's office & Department Agency heads and: State of Illinois, including the Governor's Office and State Agency heads." *Id.* This single source justification was false in that it did not state that a substantial portion of the funds paid to JDDA would be going to the subcontractors, who did little or no work for Doherty's firm and falsely stated the reason for such payments.

### ii. **2018**

On January 8, 2018, Anne Pramaggiore signed a single source justification related to JDDA's $400,000 2018 contract, which falsely stated that "Consultant has specific knowledge that cannot be sources from another supplier/contractor. Will advise ComEd leadership on various ComEd proposals which involve the City of Chicago, Count of Cook and State of Illinois, per Anne Pramaggiore, Fidel Marquez and the ComEd leadership's direction." EXE00343744. This single source justification was false in that it did not state that a substantial portion of the funds paid to JDDA would be going to the subcontractors who did little or no work and falsely stated the reason for their payment.

### iii. **2019**

On January 10, 2019, a single source justification was signed related to JDDA's $400,000 2019 contract, which falsely stated that "Consultant has specific knowledge that cannot be sources from another supplier/contractor. Will advise ComEd leadership on various ComEd proposals which involve the City of Chicago, Count of Cook and State of Illinois, per Joseph Dominquez, Fidel Marquez and the ComEd

leadership team." EXE00005385. Again, this single source justification omitted any reference to the subcontractors and falsely stated the reason for their payment.

e. **Other Communications**

Defendants caused other false statements to be made regarding JDDA's contracts and payments. For example, on July 29, 2018, Doherty's assistant wrote to ComEd accounting personnel: "I just spoke to Jay regarding his increased and expanded responsibilities for ComEd effective June 1, 2018. Here are the scope of services: City Council, Department Heads and Mayor's Office, plus expanded role with Cook County Board President's office and Cook County Commissioners and Department Heads." EXE00027935-37; *see also* EXE00370392. That email was false, because Doherty's responsibilities were not, in fact, expanding; instead, the additional payments would be going to a new subcontractor, Individual 23W-1, who was being paid not for the reasons described, but for the purpose of corruptly influencing and rewarding Michael Madigan.[4]

---

[4] Although unrelated to the alleged books and records violation, Doherty also instructed Intermediary 13W-1 and 13W-2 to submit filings with public offices, which falsely indicated that they would be performing legitimate lobbying work for ComEd and Doherty. *See, e.g.*, DOHERTY0000260; DOHERTY0000292; COOKCO_001-000001; CCIG_031-000002.

## 2. **Intermediary 2**

This section summarizes false statements made in connection with payments to Intermediary 2's consulting firm that are part of the alleged books and records violations.

### a. **Invoices**

From November 2016 through February 2018, Intermediary 2 caused invoices to be submitted to ComEd for payment, which ComEd processed internally. Each of those invoices falsely stated that the invoiced amount was for Intermediary 2's firm, and more specifically for "Lobbying services." None of the invoices stated that Intermediary 2 would be paying any subcontractors, even though Intermediary 2 made payments to Individual 13W-3 and Individual FR-1 during that time period, and those subcontractors did little or no work for Intermediary 2. Moreover, each of the invoices that were made part of the company's books and records falsely described the reason for each payment as being solely for "lobbying services," when in truth the payments were intended in part to corruptly influence and reward Michael Madigan. A list of those false invoices is below:

| Description | Beginning Bates |
| --- | --- |
| Intermediary 2 Invoice 2016.11 | EXE00416689-90 |
| Intermediary 2 Invoice 2016.12 | EXE00002069 |
| Intermediary 2 Invoice 2017.01 | EXE00001844 |
| Intermediary 2 Invoice 2017.02 | EXE00001868 |
| Intermediary 2 Invoice 2017.03 | EXE00001892 |
| Intermediary 2 Invoice 2017.04 | EXE00001916 |
| Intermediary 2 Invoice 2017.05 | EXE00001932 |
| Intermediary 2 Invoice 2017.06 | EXE00001952 |
| Intermediary 2 Invoice 2017.07 | EXE00412476 |
| Intermediary 2 Invoice 2017.08 | EXE00535264 |
| Intermediary 2 Invoice 2017.09 | EXE00412449 |

| Intermediary 2 Invoice 2017.10 | EXE00412435 |
| Intermediary 2 Invoice 2017.11 | EXE00412420 |
| Intermediary 2 Invoice 2017.12 | EXE00412419 |
| Intermediary 2 Invoice 2018.01 | EXE00252609 |
| Intermediary 2 Invoice 2018.02 | EXE00412175 |

b. **Asset Suite records**

From November 2016 through February 2018, ComEd approved payments to Intermediary 2 in ComEd's Asset Suite management system. The corresponding entries contained false and misleading information, which was in turn automatically incorporated into the company's general ledger. Specifically, the vouchers included entries falsely indicating that the payments (1) were intended for "[Intermediary 2's firm]" (in the "Vendor" entry), (2) were connected to the associated invoice submitted by Intermediary 2 (in the "Invoice Number" entry), (3) pertained to a legitimate commercial transaction (for example, the "SubAcct" entry listed "535100" for federal and state lobbying, the "SIC" entry listed "V17" for political services, and the "Project" entry listed "LL8258" for legislative services). These entries made it appear that the payment was for professional work, but did not reflect that a portion of the payments were actually intended for the subcontractors, who did little or no work for Intermediary 2, and that the payments to the subcontractors were made for the

purpose of corruptly influencing and rewarding Madigan. Those records are listed below.

| Description | Beginning Bates |
|---|---|
| Intermediary 2 Voucher 2016.10 | EXE00002026 |
| Intermediary 2 Voucher 2016.11 | EXE00002046 |
| Intermediary 2 Voucher 2016.12 | EXE00002066 |
| Intermediary 2 Voucher 2017.01 | EXE00001841 |
| Intermediary 2 Voucher 2017.02 | EXE00001865 |
| Intermediary 2 Voucher 2017.03 | EXE00001889 |
| Intermediary 2 Voucher 2017.04 | EXE00001913 |
| Intermediary 2 Voucher 2017.05 | EXE00001929 |
| Intermediary 2 Voucher 2017.06 | EXE00001949 |
| Intermediary 2 Voucher 2017.07 | EXE00001969 |
| Intermediary 2 Voucher 2017.08 | EXE00001989 |
| Intermediary 2 Voucher 2017.09 | EXE00002009 |
| Intermediary 2 Voucher 2017.10 | EXE00002030 |
| Intermediary 2 Voucher 2017.11 | EXE00002050 |
| Intermediary 2 Voucher 2017.12 | EXE00002070 |
| Intermediary 2 Voucher 2018.01 | EXE00001845 |
| Intermediary 2 Voucher 2018.02 | EXE00001869 |

c. **Contracts**

i. **2016**

Intermediary 2 signed a contract dated January 1, 2016, which falsely suggested that all the money paid under that contract was to "assist ComEd by providing Illinois political and legislative analysis on all bills and resolutions in which ComEd has any interest, direct or indirect, present or prospective; and represent ComEd in legislative and regulatory matters before the Illinois General Assembly and other Illinois governmental bodies," among other services, when in fact a substantial portion was destined for the subcontractors, who did little or no work as discussed above, and were receiving payment so that the company could corruptly influence and reward Madigan. EXE00001724.

ii. **2017**

Intermediary 2 signed a contract dated January 1, 2017, which falsely suggested that all the money paid under that contract was to "assist ComEd by providing Illinois political and legislative analysis on all bills and resolutions in which ComEd has any interest, direct or indirect, present or prospective; and represent ComEd in legislative and regulatory matters before the Illinois General Assembly and other Illinois governmental bodies," among other services, when in fact a substantial portion was destined for the subcontractors for the illicit purposes repeatedly described above. EXE00001740.

iii. **2018**

Intermediary 2 signed a contract dated January 1, 2018, which falsely suggested that all the money paid under that contract was to "assist ComEd by providing Illinois political and legislative analysis on all bills and resolutions in which ComEd has any interest, direct or indirect, present or prospective; and represent ComEd in legislative and regulatory matters before the Illinois General Assembly and other Illinois governmental bodies," among other services, when in fact a substantial portion was destined for the subcontractors for the illicit purposes repeatedly described above. EXE00001756.

3. **Intermediary 3**

This section summarizes false statements made in connection with payments to Intermediary 3's firm that are part of the alleged books and records violations.

   a. **Invoices**

From March 2018 through December 2018, Intermediary 3 caused invoices to be submitted to ComEd for payment, which ComEd processed internally. Each of those invoices falsely stated that the invoiced amount was for Intermediary 3's firm, and more specifically to "[p]rovide Illinois political and legislative analysis and represent client in legislative and regulatory matters before the Illinois General Assembly and other Illinois government bodies." The invoices were false in that they made it appear that each payment was for Intermediary 3, when in fact a substantial portion of each payment was for the subcontractors, even though these individuals did little or no work for Intermediary 3 and the payments were for the illicit purposes described above. A list of those false invoices is below:

| Description | Beginning Bates |
|---|---|
| Intermediary 3 Invoice 2018.03 | EXE00753459 |
| Intermediary 3 Invoice 2018.04 | EXE00753457 |
| Intermediary 3 Invoice 2018.05 | EXE00753319 |
| Intermediary 3 Invoice 2018.06 | EXE00753317 |
| Intermediary 3 Invoice 2018.07 | EXE00001598 |
| Intermediary 3 Invoice 2018.08 | EXE00001602 |
| Intermediary 3 Invoice 2018.09 | EXE00753315 |
| Intermediary 3 Invoice 2018.10 | EXE00753313 |
| Intermediary 3 Invoice 2018.11 | EXE00252607 |
| Intermediary 3 Invoice 2018.12 | EXE00707273 |

b. **Asset Suite records**

From March 2018 through December 2018, ComEd approved payments to Intermediary 3's firm in ComEd's Asset Suite management system. The corresponding entries contained false and misleading information, which was automatically incorporated into the company's general ledger. Specifically, the vouchers included entries falsely indicating that the processed payments (1) were intended for "[Intermediary 3's firm]" (in the "Vendor" entry), (2) were connected to the associated invoice submitted by Intermediary 3 (in the "Invoice Number" entry), (3) pertained to a legitimate commercial transaction (for example, the "SubAcct" entry listed "535100" for federal and state lobbying, the "SIC" entry listed "V17" for political services, and the "Project" entry listed "LL8258" for legislative services). These entries made it appear that the payment was for professional work, but did not reflect that a portion of the payments were actually intended for subcontractors, who

did little or no work for Intermediary 3's firm, and were being paid for the illicit purposes described above. Those records are listed below.

| Description | Beginning Bates |
|---|---|
| Intermediary 3 Voucher 2018.03 | EXE00001567 |
| Intermediary 3 Voucher 2018.04 | EXE00001575 |
| Intermediary 3 Voucher 2018.05 | EXE00001583 |
| Intermediary 3 Voucher 2018.06 | EXE00001591 |
| Intermediary 3 Voucher 2018.07 | EXE00001595 |
| Intermediary 3 Voucher 2018.08 | EXE00001599 |
| Intermediary 3 Voucher 2018.09 | EXE00001603 |
| Intermediary 3 Voucher 2018.10 | EXE00001607 |
| Intermediary 3 Voucher 2018.11 | EXE00001543 |
| Intermediary 3 Voucher 2018.12 | EXE00001547 |

c. **Contract**

Intermediary 3 signed a contract dated January 1, 2018, which falsely suggested that all the money paid under that contract was to "assist ComEd by providing Illinois political and legislative analysis on all bills and resolutions in which ComEd has any interest, direct or indirect, present or prospective; and represent ComEd in legislative and regulatory matters before the Illinois General Assembly and other Illinois governmental bodies," among other services, when in fact a substantial portion was destined for the subcontractors, who were being paid for the illicit purposes described above. EXE00001673.

4. **Intermediary 5**

This section summarizes false statements made in connection with payments to another intermediary (Intermediary 5) that are part of the alleged books and records violations.

a. **Invoices**

From January to February 2017, Intermediary 5 caused invoices to be submitted to ComEd for payment, which ComEd processed internally. Those invoices falsely stated that the invoiced amount was for Intermediary 5, and more specifically for "Lobbying services." None of the invoices stated that Intermediary 5 would be paying a subcontractor $5,000 each month, even though Intermediary 5 paid Individual FR-1's sons' firm that amount each month. Nor did the invoices accurately describe the purpose of the payment, which was made for the illicit reasons repeatedly described above. A list of those false invoices is below:

| Description | Beginning Bates |
|---|---|
| Intermediary 5 Invoice 2017.01 | EXE00000169 |
| Intermediary 5 Invoice 2017.02 | EXE00000229 |

b. **Asset Suite records**

ComEd approved payments to Intermediary 5 in ComEd's Asset Suite management system. The corresponding entries contained false and misleading information related to the January and February 2017 Intermediary 5 invoices, which was in turn automatically incorporated into the company's general ledger. Specifically, the vouchers included entries falsely indicating that the payments were intended for "[Intermediary 5]" (in the "Vendor" entry), and were connected to the

associated invoice submitted by Intermediary 5 (in the "Invoice Number" entry). These records were false for the same reasons described above. Those records are listed below:

| Description | Beginning Bates |
|---|---|
| Intermediary 5 Voucher 2017.01 | EXE00000671 |
| Intermediary 5 Voucher 2017.02 | EXE00000674 |

c. **Contract**

Intermediary 5 entered into a contract with ComEd for 2017, which falsely stated that the amount to be paid was for Intermediary 5 to "[p]rovide strategic advisory services to ComEd on an on-call basis" and to "[p]rovide overall strategic communication on various public works issues, promote new facilities and service options, develop marketing material, promote community events, and will identify, assess, and mitigate political risks." EXE00002269. This was false because the payments were for the illicit purposes described above.

Respectfully submitted.


JOHN R. LAUSCH, JR.
United States Attorney

By:  */s/ Julia K. Schwartz*
AMARJEET S. BHACHU
DIANE MacARTHUR
SARAH STREICKER
TIMOTHY J. CHAPMAN
MICHELLE KRAMER
JULIA K. SCHWARTZ
Assistant United States Attorneys
219 South Dearborn Street
Fifth Floor
Chicago, Illinois 60604
(312) 353-5326