UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHAEL McCLAIN,<br>ANNE PRAMAGGIORE,<br>JOHN HOOKER, and<br>JAY DOHERTY | No. 20 CR 812<br><br>Judge Harry D. Leinenweber |

# GOVERNMENT'S RESPONSE TO DEFENDANT JAY DOHERTY'S SECOND MOTION FOR A BILL OF PARTICULARS

JOHN R. LAUSCH, JR.
United States Attorney

AMARJEET S. BHACHU
DIANE MacARTHUR
TIMOTHY CHAPMAN
SARAH STREICKER
JULIA K. SCHWARTZ
Assistant United States Attorneys

## INTRODUCTION

From 2011 to 2019, defendants Michael McClain, Anne Pramaggiore, John Hooker, and Jay Doherty conferred a stream of benefits on Michael Madigan, the Speaker of the Illinois House of Representatives, intending to corruptly influence and reward Madigan's efforts to assist ComEd with legislation affecting its business. This Court has repeatedly held, consistent with Circuit precedent, that the government is not required to prove a *quid pro quo* or an official act under 18 U.S.C. § 666(a)(2). R. 83 at 8-15. Doherty once again asks the Court to revisit its rulings in the guise of a motion for a second bill of particulars. The Court should deny his motion.

## FACTUAL BACKGROUND

The indictment alleges that defendants engaged in bribery and conspired to do so by hiring consultants at ComEd for the corrupt purpose of influencing former Speaker Michael Madigan.[1] As alleged in the indictment, McClain regularly made requests on Madigan's behalf to defendant Anne Pramaggiore, Fidel Marquez, and other ComEd personnel to hire individuals associated with Madigan as full-time employees, consultants, and contractors. R. 1 ¶ 23. The other defendants, including Jay Doherty, in turn, secured and attempted to secure jobs and contracts for these individuals, many of whom did little or no work for ComEd, for the purpose of corruptly influencing and rewarding Madigan. *Id.* ¶ 24, 28(bb), 28(hh), 28(kk). Instead of paying these "subcontractors" directly, ComEd made regular payments to Doherty's firm, JDDA, which were passed on to Madigan's associates. *Id.* ¶ 28.

---

[1] The government incorporates its previous factual summaries herein. *See* R. 54, 75.

## PROCEDURAL HISTORY

On November 18, 2020, a grand jury returned a nine-count indictment against McClain, Pramaggiore, Hooker, and Doherty. Defendants filed a motion to dismiss, a motion for a bill of particulars, and a motion to strike surplusage from the indictment. R. 45; R. 44; R. 56; R. 62. In its February 17, 2022 Order (R. 83), the Court denied defendants' motion to dismiss and largely denied their motion for a bill of particulars. The Court held that: (1) the government need not prove an official act to proceed under a gratuity theory under § 666 (*id.* at 8-9); (2) a *quid pro quo* is not an element of a § 666 violation (*id.* at 10-14); and (3) the government was not required to file a bill of particulars listing each individual whom ComEd hired or retained with the intent to influence or reward Madigan, each act defendants intended to influence or reward, and each false statement alleged with regard to the individual false statement counts. (*Id.* at 21-24.)[2]

At the defendants' request, the Court agreed to determine the jury instructions on the elements of 18 U.S.C. § 666 before the final instructions conference. R. 90. The parties submitted multiple briefs concerning the § 666 instructions. R. 92-94, 97-98. In its oral ruling on June 21, 2022, the Court "adopt[ed] the government's proposed jury instructions and decline[d] to adopt defendants' digressions from the pattern jury instructions." R. 101 at 4. The Court incorporated its February 17, 2022 Order, and

---

[2] The Court ordered the government to file a bill of particulars listing the false statements alleged in the conspiracy count (Count 1) (R. 83 at 23), which the government did on December 7, 2022. R. 109.

2

rejected defendants' request to include a *quid pro quo* requirement in the jury instructions: "The Court, as set forth in the February 17th, 2022, decision, follows the Seventh Circuit, which found that 'our circuit, like most others, does not require a specific *quid pro quo* for Section 666, and that a jury instruction suggesting such a requirement would be incorrect as a matter of law.'" *Id.* (citing *United States v. Boender*, 649 F.3d 650 (7th Cir. 2011)). The Court further ruled that it was "appropriate to include both bribes and gratuities in the jury instructions." *Id.* at 5.

Defendant Jay Doherty has filed yet another motion for a bill of particulars, asking that the government be ordered to list: (1) How many offers/solicitations occurred? (2) Approximately when did each of the alleged offers/solicitations occur? (3) Who made them and to whom were they communicated? (4) Was the solicitation/offer made to influence (bribe) or reward (gratuity) Madigan? (5) What was the "business, transaction or series of transactions" which was the object of the solicitation/offer? R. 107 at 1-2. The Court, however, already denied defendants' bill of particulars that sought nearly identical information. Indeed, the Court denied defendants' prior motion that requested a list of (1) each individual hired in violation of 18 U.S.C. § 666; and (2) all business, transactions, or series of transactions that were the object of defendants' alleged intent to corruptly influence or reward Madigan in violation of 18 U.S.C. § 666. R. 83 at 21-24. The Court correctly concluded that the Indictment "sufficiently articulated the elements charged," and provided "specific examples . . . on how the scheme worked with respect to four hiring decisions, one law firm retention, one board appointment, and one preferential intern program." *Id.* at

3

21-22. The Court concluded that the indictment and discovery were sufficient to allow defendants to prepare for trial, because all the hiring recommendations came through defendant McClain, and "[d]efendants are in the best position to know which individuals and entities they directed the company to retain based on McClain's recommendations." *Id.* at 22. In addition, the Court denied defendants' request for particularization as to the acts defendants intended to influence or reward, because "[t]he Government has already provided specific legislation that was passed during the conspiracy and favorable to ComEd." *Id.* at 24. As set forth below, Doherty's motion for a second bill of particulars rehashes the same arguments the Court already rejected, and fails to establish good cause for the Court to revisit its prior rulings. For those reasons, Doherty's motion to file a second bill of particulars should be denied.

## LEGAL STANDARD

A "defendant's constitutional right is to know the offense with which he is charged, not to know the details of how it will be proved." *United States v. Fassnacht*, 332 F.3d 440, 446 (7th Cir. 2003) (quotations and citation omitted); *see also United States v. Glecier*, 923 F.2d 496, 502 (7th Cir. 1991) (citing *United States v. Kendall*, 665 F.2d 126, 134 (7th Cir. 1981)) (a defendant's "constitutional rights under the fifth and sixth amendments require that he be informed of the nature of the offense charged to allow him to prepare a defense and to protect his double jeopardy rights; they do not require the government to reveal the details of how it plans to prove its case"). A motion for a bill of particulars should be denied when the indictment "includes each of the elements of the offense charged, the time and place of the

4

accused's conduct which constituted a violation, and a citation to the statute or statutes violated." *Fassnacht*, 332 F.3d at 446.

Where the indictment, combined with the discovery, adequately informs the defendants of the charges against them, no bill of particulars is warranted. *See, e.g.*, *United States v. Vaughn*, 722 F.3d 918, 927 (7th Cir. 2013); *United States v. Blanchard*, 542 F.3d 1133, 1140-41 (7th Cir. 2008) (affirming denial of motion for bill of particulars where the defendant "was the beneficiary of extensive pretrial discovery"); *United States v. Hernandez*, 330 F.3d 964, 975 (7th Cir. 2003). The "choice to grant or deny" a bill of particulars "is committed to the discretion of the trial court, and a decision denying a bill of particulars" is reviewable only for an abuse of discretion. *Fassnacht*, 332 F.3d at 446 (citing *Kendall*, 665 F.2d at 134).

## ARGUMENT

### I. Doherty Requests the Same Information as in his Prior, Unsuccessful Particulars Motion.

Doherty's motion is an attempt to re-litigate issues this Court has already decided. Doherty asks the government to identify the number and timing of each offers/solicitation, and the individuals who communicated those offers/ solicitations and to whom (R. 107 at 1-2)—essentially his prior request, which the Court denied, for a list of all individuals hired at McClain's request. He also seeks a particularization of the "business, transaction or series of transactions" that was the object of the solicitation/offer (R. 107 at 1-2)—a repeat of his prior unsuccessful request for a list of each piece of legislation defendants sought to improperly

5

influence. And he asks for a particularization of whether each solicitation / offer was a bribe or a gratuity (R. 107 at 1-2), even though this Court has held that "§ 666(a)(2) is a single offense, which could be committed through either" intending to influence (a bribe) or reward (a gratuity) an official. R. 83 at 18-19.

There has been no change in the applicable law or facts that would justify a bill of particulars. The 50-page indictment adequately informs the defendant of the nature of the charges and allows him to plead the judgment as a bar to future prosecutions, as this Court has already held. *See United States v. Singleton*, 588 F.3d 497, 499 (7th Cir. 2009). The indictment details the hiring of Individuals 23W-1, 13W-1, 13W-2, and 13W-3, who were Madigan's associates and were indirectly paid by ComEd through Doherty, even though they did little or no work for ComEd, and defendants' falsification of records related to their hiring. R. 1 ¶¶ 4-9, 28. The indictment details how these benefits were intended to influence Madigan with respect to ComEd's legislation and describes the most important legislation during the scheme. *E.g., id.* ¶¶ 1(o), 1(p), 1(q), 3, 28.

Defendants have received voluminous discovery related to the hiring of these individuals, including emails, contracts, recorded conversations, interview reports, and grand jury testimony concerning these hiring decisions. The government also has provided early disclosure of many witness statements. And the government recently filed a bill of particulars, as directed by the Court, setting forth in extensive detail the false statements about each of Doherty's "subcontractors" upon which it will rely at trial. R. 109. Where, as here, the indictment, combined with voluminous discovery,

6

adequately informs the defendants of the charges against them, no bill of particulars is warranted. *E.g., United States v. Canino*, 949 F.2d 928, 949 (7th Cir. 1991); *United States v. Salley*, No. 19-CR-797-1, 2021 WL 2915119, at *3 (N.D. Ill. July 12, 2021) (motion for bill of particulars denied when 20-page indictment and voluminous discovery were "more than sufficient to state the elements of the charges and inform the defendant of the nature of the charges and the factual basis on which they rest so that she may prepare a defense"); *United States v. Alex,* 791 F. Supp. 723, 728 (N.D. Ill. 1992) (request for specific information on all instances when defendant and others took steps in furtherance of RICO conspiracy exceeded proper scope of bill of particulars); *United States v. Wilson*, 493 F. Supp. 2d 364, 372 (E.D.N.Y. 2006) ("As a general rule, a defendant is not entitled to receive details of the government's conspiracy allegations in a bill of particulars."). Doherty's effort to rehash old arguments should be denied, as set forth in more detail below.

## II. Doherty Has Ample Information Concerning the Offers and Solicitations.

Doherty asserts that he needs more information about the number and timing of each offer and solicitation and the individuals who communicated those offers and solicitations and to whom. R. 107 at 1-2. The indictment amply spells out Doherty's role in hiring Madigan's allies. Indeed, Doherty recognizes that he is alleged to have been involved in "the hiring of 13W-1, 13W-2, 13W-3, and 23W-1," and the evidence will show that he made payments to each of these individuals. R. 107 at 3. The indictment also details Doherty's knowledge that the "subcontractors" did little or no

7

work, and his falsification of records related to their hiring. R. 1 ¶¶ 4-9, 28.

Doherty claims that "without some information identifying when such a solicitation or offer occurred, by or to whom, and for which legislation, Doherty is left wading through three terabytes of discovery to guess at what the Government might present to the jury." He ignores the detailed, 50-page indictment, as well as the bill of particulars the government already tendered, the draft recording transcripts that will be provided to the defense on January 13, 2023, and the exhibit list that will be tendered on February 21, 2023. Moreover, the government will file its Santiago proffer tomorrow, which will also provide the defendants with additional information about the proof the government expects to introduce at trial. Doherty has been provided with more than adequate information to prepare for trial; a bill of particulars is not to be used to figure out how the government will prove its case, which is precisely what Doherty seeks to accomplish.

### III. The Government Is Not Required to Identify Bribes or Gratuities.

Doherty also asks for a particularization of whether each solicitation or offer was a bribe or a gratuity. R. 107 at 1-2. The government is not required to state which of two means of committing a crime it will rely on at trial. This Court held that a defendant may violate § 666(a)(2) by one of two means: "§ 666(a)(2) is a single offense, which could be committed through either" intending to influence (a bribe) or reward (a gratuity) an official. R. 83 at 18-19; *see also* Fed. R. Crim. P. 7(c)(1) ("A count may allege that . . . the defendant committed it by one or more specified means.") This ruling was correct.

As Judge Lee recognized in *United States v. Donagher,* 520 F. Supp. 3d 1034, 1055 (N.D. Ill. 2021), § 666 "sets forth just one offense, with two means." The *Donagher* court further concluded, consistent with the Court's prior ruling, that a § 666(a)(2) violation premised upon consideration other than a campaign contribution does not require a *quid pro quo*. *Id.* at 1047-48. Doherty tries to distinguish *Donagher* by claiming that there is no evidence that Doherty communicated directly with Madigan about any bribes or gratuities. There is no requirement that Doherty communicate directly with Madigan. There is ample evidence from which the jury will be able to find that Doherty joined the charged conspiracy and knew exactly what the payments he made to Madigan's associates were for.[3]

Defendant cites the Seventh Circuit Pattern Jury Instruction Committee's proposed updated *commentary* to the § 666 pattern jury instructions, but that commentary is not relevant here, and, in any event, pattern instructions do not bind the Court. *See United States v. Rainone*, 816 F.3d 490, 495 (7th Cir. 2016) ("pattern jury instructions cannot override precedent."). Specifically, Doherty cites to proposed commentary stating that "the Committee does not take a position," but recommends that lawyers and judges consider "whether the intent to 'influence' and intent to 'reward' are two separate theories of liability, that is, bribery ('influence') versus

---

[3] Contrary to Doherty's suggestion, the court in *United States v. Jennings*, 160 F.3d 1006 (4th Cir. 1998), declined to decide whether gratuity is a lesser included offense of bribery under § 666. *Id.* at 1015, 1018 (concluding that the court "need not decide today whether § 666 also covers 'gratuities,' that is, payments made for or because of an official act," and thus "assum[ing] (without deciding) that § 666 does not prohibit gratuities").

9

gratuity ('reward')," and whether a case presenting "*only* an intent to 'influence' theory" may require a *quid pro quo*. Seventh Circuit Pattern Criminal Jury Instructions Committee, "2022 Proposed Revisions to the Pattern Criminal Jury Instructions," at 8-9, available at www.ca7.uscourts.gov/pattern-jury-instructions/ 2022_CR_pattern_jury_instr_revisions.pdf (last visited Jan. 6, 2023) (emphasis added). Here, the government has alleged *both* intent to "influence" and intent to "reward." The proposed commentary asking the parties to "consider" a situation not present here makes it plain the proposed comment has no application in this case.

Doherty argues that recent out-of-circuit authority requires the government to prove a specific *quid pro quo* in this case. *See United States v. Hamilton*, 46 F.4th 389, 394 (5th Cir. 2022) (§ 666 only criminalizes *quid pro quo* bribery, not gratuities). In so ruling, the Fifth Circuit applied the same reasoning as the First Circuit's holding in *United States v. Fernandez*, 722 F.3d 1, 26 (1st Cir. 2013) ("gratuities are not criminalized under § 666."). But this Court already correctly rejected this argument as inconsistent with Seventh Circuit precedent—and the majority of circuits to address the issue, as discussed above. R. 83 (the Court "respectfully disagrees with the First Circuit's conclusion" in *Fernandez*).[4] *See also United States v. Mullins*, 800 F.3d 866, 871 (7th Cir. 2015) (holding that evidence of *quid pro quo* is not necessary to establish a violation of § 666(a)(1)(B)); *United States v. Boender*, 649

---

[4] Indeed, in *Hamilton*, the Fifth Circuit acknowledged that its holding was inconsistent with the holdings of the Second, Sixth, Seventh, Eighth, and Eleventh Circuits, which have concluded that § 666(a) covers both bribery and illegal gratuities. *Id.* at 396.

10

F.3d 650, 654 (7th Cir. 2011) (noting that "it is clear that our circuit, like most others, does not require a specific *quid pro quo*" in cases involving charged violations of § 666(a)(2)); *United States v. Gee*, 432 F.3d 713, 714 (7th Cir. 2005) (holding that a *quid pro quo* is sufficient but not necessary to violate § 666(a)(1)(B)); *United States v. Agostino*, 132 F.3d 1183, 1190-91 (7th Cir. 1997) (§ 666(a)(2), "by its statutory language, requires that the defendant act '*corruptly . . . with intent to influence or reward*,'" and on that basis "declin[ing] to import an additional, specific *quid pro quo* requirement into the elements of § 666(a)(2)").[5] The Court should not revisit its rulings on this issue.

The Seventh Circuit's precedent on this issue is further supported by the statute's legislative history, which demonstrates that Congress intended § 666 would not be limited to *quid pro quo* bribery. Specifically, Congress amended § 666 in 1986 to add a corrupt intent requirement. Pub. L. No. 99-646, § 59, 100 Stat. 3592, 3613 (1986). The 1986 amendment was designed to "parallel[] the bank bribery provision (18 U.S.C. 215)," which had been amended earlier that year. H.R. Rep. 99-797, § 42, at 6153 n.9 (1986) (citing legislative history for § 215).

Given that Congress modeled § 666 after § 215, the legislative history of § 215 is instructive as to § 666. In 1984, Congress removed the *quid pro quo* requirement from the existing version of the bank bribery statute (§ 215) and made bank bribery a felony, among other changes. Pub. L. No. 98-473, § 1106, 98 Stat. 1837, 2145-46

---

[5] The government incorporates its arguments on this issue, set forth in its response to defendants' motion to dismiss. R. 54.

11

(1984); *see also* 1 Villa, John. K., *Banking Crimes: Fraud, Money Laundering and Embezzlement* § 5:3 (2022). Representative John Conyers Jr., the sponsor of the 1984 and 1986 amendments to § 215, made clear that § 215 prohibits gratuities, or "payments made to an officer or employee of a financial institution as a *reward* for violating a duty or taking a discretionary action." *Financial Bribery and Fraud Amendments Act of 1984: Hearing on H.R. 5405 Before the Subcomm. on Criminal Justice of the H. Comm. on the Judiciary*, 98th Cong. at 1 (Apr. 26, 1984) (statement of Rep. Conyers) (emphasis added). Congress amended § 215 to add a corrupt intent requirement in 1986 (just months before doing the same for § 666). Significantly, Congress did not reinstate the *quid pro quo* requirement, and again made clear that § 215 criminalizes gratuities. Representative Rick Boucher stated that § 215 "prohibits giving or accepting two types of payments . . . : Those intended to influence a discretionary decision or induce a violation of a legal or fiduciary duty and those given as a *reward* for making a particular discretionary decision or for violating a legal or fiduciary duty." *Bank Bribery: Hearings on H.R. 2617, 2839, and 3511 Before the Subcomm. On Criminal Justice of the H. Comm. on the Judiciary*, 99th Cong. 2 (July 11 and 17, 1985) (emphasis added). Representative Conyers also stated that, in drafting the § 215 amendment, "the committee sought to effectuate the purpose of section 215 as identified by the Justice Department." 131 Cong. Rec. 29324 (Oct. 29, 1985). Department of Justice representatives had emphasized the importance of criminalizing bribes and gratuities in the same manner, because "[b]ank bribery is usually not the simple, unsophisticated *quid pro quo* of someone saying, 'Hey, if you

give me that loan I'll give you $5,000.' Criminality among bank officers often evolves from a cozy relationship which builds and grows between a bank officer and the interested party." *Bank Bribery Hearing*, 99th Cong. 3 (July 11 and 17, 1985) (testimony of Deputy Attorney General Victoria Toensing). Another Department of Justice representative similarly testified that "the seriousness of graft is just as serious as the *quid pro quo* loan, that we think the penalty provisions ought to be the same . . . ." *Id*. at 8 (testimony of Stephen Learned). The legislative history thus demonstrates that Congress did not intend § 215 to be limited to *quid pro quo* bribes, but also criminalized gratuities. Because § 666 was modeled after § 215, it is similarly clear that Congress intended to criminalize gratuities in amending § 666. Indeed, Doherty fails to consider the legislative history of § 666 and the statute it was modeled after, § 215.

### IV. Doherty Again Improperly Attempts to Add an "Official Act" Requirement.

Doherty asks the government to identify the business, transaction, or series of transactions that was the object of each solicitation. R. 107. The indictment's detailed allegations sufficiently identify the business or transaction, as this Court has ruled.

As the Court recognized, the government is not required to link each charged solicitation to a specific piece of legislation. In its February 17, 2022 Order, the Court observed that "neither the words nor the definition of 'official act' are present in the language of the statute upon which Defendants have been indicted. Instead, § 666(a)(2) appears to rely on the word 'corruptly' to differentiate between legal and

13

illegal transfers of value between private individuals and officials." R. 83 at 8. The Court thus correctly concluded that the indictment adequately alleged the actions by Madigan that the defendants intended to reward, namely "the General Assembly's passage of the Energy Infrastructure and Modernization Act ("EIMA") in 2011, Senate Bill 9 in 2013 (overturning an adverse interpretation of EIMA), and the Future Energy Jobs Act in 2016, as well as ComEd's 'continuing interest in advancing legislation in the General Assembly favorable to its interests, and opposing legislation that was not consistent with its operational and financial success.'" *Id.* at 9. There is no basis to disturb the Court's sound ruling.

Contrary to Doherty's argument, and as the Court has recognized, the "official act" requirement set forth in *McDonnell v. United States,* 579 U.S. 550 (2016), has no application to § 666. In *McDonnell*, the governor of Virginia and his wife were charged with honest services fraud, in violation of 18 U.S.C. § 1346, and Hobbs Act extortion, in violation of 18 U.S.C. § 1951, based on their acceptance of luxury goods, vacations, and personal loans from a Virginia businessman seeking to influence the funding decisions of state medical schools. The Supreme Court held that the district court should have instructed the jury that (1) an "official act," as the parties agreed would be included in the jury instructions, is limited to a "question, matter, cause, suit, proceeding or controversy involving the formal exercise of government power," *id.* at 574; (2) the pertinent "'question, matter, cause, suit, proceeding or controversy' must be something specific and focused that is 'pending' or 'may by law be brought before any public official,' such as the question whether to initiate the research studies," *id.*;

14

at 579 and (3) "merely arranging a meeting or hosting an event to discuss a matter does not count as a decision or action on that matter." *Id.*

Whereas *McDonnell* involved a prosecution for honest services fraud and extortion under color of official right, which the parties agreed required proof that charged bribes were paid in exchange for an "official act," § 666 does not use the term "official act" or "official right." Instead, § 666(a)(2) proscribes corruptly giving, offering, or agreeing to give "anything of value to any person, with intent to influence or reward" an agent of the relevant governmental entity. Section 666 requires that the thing of value being given or offered be in connection with "any business [or] transaction" of the government entity, rather than an official act, and it does not include a list of concrete items, such as "cause, suit, proceeding or controversy," which the Supreme Court found implicitly limited the terms "question [or] matter." In other words, § 666 does not require that the defendants contemplate an exchange for a discrete official act, so long as they intended to corruptly influence in connection with governmental business more generally.

While the Seventh Circuit has not addressed the issue, every circuit court that has done so has declined to import *McDonnell*'s holding into prosecutions under § 666 for the above reasons.[6] Despite this overwhelming weight of authority, Doherty

---

[6] *See United States v. Lindberg*, 39 F.4th 151, 166-68 (4th Cir. 2022); *United States v. Roberson*, 998 F.3d 1237, 1247, 1251 (11th Cir. 2021) (holding, "[c]onsistent with the views of our sister Circuits," that *McDonnell*'s "official act" requirement does not apply to § 666 and that a bribery conviction also does not require a "specific act"); *United States v. Ng Lap Seng*, 934 F.3d 110, 131-33 (2d Cir. 2019), *cert. denied*, 141 S. Ct. 161 (2020) (holding that § 666 is "more expansive" than § 201, so "the *McDonnell* standard" does not apply); *United States v.*

claims that courts have narrowed what constitutes the applicable "business, transaction, or series of transactions" sought to be influenced in a § 666. R. 107 at 16. But he misquotes from irrelevant decisions. For example, *United States v. Alfisi*, 308 F.3d 144, 150 (2nd Cir. 2002), involved bribery under § 201 and—contrary to Doherty's citation—did not even address whether the phrases "official act" and "official duty" should be narrowly or broadly construed. In *United States v. Lindberg*, 39 F.4th 151 (4th Cir. 2022), also cited by Doherty, the court declined to apply an "official act" requirement to § 666(a)(2), and articulated the unremarkable proposition that the business or transaction requirement in § 666 is necessarily narrower than the "official act" requirement of § 201, as it is limited to "business of *the covered entity*," which must be "something relatively concrete and circumscribed," and which must be valued at $5,000 or more. *Id.* at 174. Here, Madigan's immense power as Speaker of the House, with control over the direction of ComEd's legislation, as described in the indictment, unquestionably qualifies as "business" under § 666. *See Gee*, 432 F.3d at 715 ("A legislator with the ability to control the senate's agenda can throw a monkey wrench into a Governor's program, and this power confers influence over executive decisions even when the legislature does not pass any particular law.").

---

*Porter*, 886 F.3d 562, 565 (6th Cir. 2018) (finding defendant's "reliance on *McDonnell* is misplaced," because "[i]n *McDonnell*, the Supreme Court limited the interpretation of the term "official act" as it appears in § 201, an entirely different statute than [§ 666]"); *United States v. Boyland*, 862 F.3d 279, 291 (2d Cir. 2017) (same); *United States v. Maggio*, 862 F.3d 642, 646 n.8 (8th Cir. 2017) ("*McDonnell* had nothing to do with § 666.").

Even if the government were required to identify specific legislation that each solicitation was intended to influence or reward—and it is not— the indictment spells out the most significant ComEd legislation during the charged conspiracy. R. 1 ¶¶ 2, 3, 15, Counts 2, 5, 6, 8. In fact, Doherty recognizes this in his motion, repeatedly referring to key ComEd legislation, such as EIMA, Senate Bill 9, and FEJA. Doherty is therefore wrong to suggest that the Indictment alleges an "open ended" solicitation without reference to any particular legislation. Moreover, courts have approved of a "stream of benefits" or "retainer" theory of bribery, including in the context of § 666. *See, e.g., Ryan v. United States*, 688 F.3d 845, 852 (7th Cir. 2012) ("The corruption here was more like a meal plan in which you don't pay for each item on the menu. Rather, there is a cost that you pay, an ongoing cost, and you get your meals."); *United States v. Solomon*, 892 F.3d 273, 276 (7th Cir. 2018) (honest services fraud statute "reaches schemes that involve a stream of benefits over time, not just singly negotiated deals"); *United States v. Roberson*, 998 F.3d 1237, 1251-52 (11th Cir. 2021) (approving of "'retainer' theory of liability" in a § 666 case).

Doherty further claims that no witness will "testify that Doherty knew another was solicitated or made an offer to provide a job to benefit [Madigan] in connection with EIMA, Senate Bill 9 or FEJA, or to benefit any specific matter before the Illinois legislature." R. 107. He later argues that "the discovery fails to reveal any communications between Doherty and [Madigan] or any of the co-defendants, or any employees of ComEd regarding hiring subcontractors for the purpose of influencing or rewarding specific legislation affecting ComEd." The government disputes

17

Doherty's characterizations, and in any event the question of whether Doherty knowingly participated in a corrupt solicitation or offer is one for the jury. A motion for a bill of particulars is not the proper vehicle to raise trial defenses.

Finally, his contention that he needs more information to determine whether the legislation's value exceeded $5,000 is similarly misplaced. Each piece of legislation had a value far in excess of $5,000, as the evidence will show at trial, and the defendant has received discovery that makes this obvious.[7]

## CONCLUSION

For foregoing reasons, the government respectfully requests that the Court deny Jay Doherty's second motion for a bill of particulars.

Respectfully submitted.

JOHN R. LAUSCH, JR.
United States Attorney

/s/ *Amarjeet S. Bhachu*
AMARJEET S. BHACHU
Assistant United States Attorney

---

[7] On January 9, 2023, the government served the defense with a detailed disclosure outlining the anticipated testimony of a witness, who will testify about the financial benefit to ComEd that resulted from the passage of these pieces of legislation.