UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 20 CR 812 |
| | ) | |
| MICHAEL McCLAIN, *et al.*, | ) | Honorable Harry D. Leinenweber |
| | ) | |
| Defendants. | ) | |

### JOHN HOOKER'S CONSOLIDATED MOTIONS *IN LIMINE*

JOHN HOOKER respectfully moves *in limine* to preclude the Government from introducing evidence, testimony, or argument regarding and/or referencing the following: (1) Mr. Hooker's salary and compensation from Commonwealth Edison ("ComEd"); (2) Speculative testimony by Government witness and cooperator Fidel Marquez; (3) The cancellation of Mr. Hooker's contract with ComEd in 2019; and (4) Rule 404(b) evidence against co-defendant Michael McClain.[1]

IN SUPPORT of these motions, Defendant states as follows:

### LEGAL STANDARD

Under Federal Rule of Evidence 401, evidence is only relevant if it has the tendency to make the existence of any fact of consequence to the determination of the action "more or less probable than it would be without the evidence." Fed. R. Evid. 401. "Relevancy is a threshold inquiry," and evidence that is not relevant is inadmissible. *Dowling v. United States*, 493 U.S. 342, 350-51 n.3 (1990); Fed. R. Evid. 402.

---

[1] Motions *in Limine* 2, 3, and 4 are adopted and joined by co-defendant, Anne Pramaggiore. Motion *in Limine* 4 is adopted and joined by co-defendant, Michael McClain.

A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Fed. R. Evid. 602. "Personal knowledge can include reasonable inferences drawn from a witness's observations and firsthand experiences." *United States v. Proano*, 912 F.3d 431, 441 (7th Cir. 2019); see also *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003). "Reasonable inferences" do not include "speculating as to an [individual]'s state of mind, or other intuitions, hunches, or rumors." *Widmar v. Sun Chemical Corp.*, 772 F.3d 457, 460 (7th Cir. 2014).

Even relevant evidence may be excluded under Rule 403 "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403. "Unfair prejudice", according to Rule 403 "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). The Court has broad discretion on admissibility and "has not only the discretion but also the duty to exclude evidence of little or no relevance or probative value which might have a prejudicial effect." *Sec. State Bank v. Baty*, 439 F.2d 910, 913 (10th Cir. 1971).

A motion *in limine* seeks to "exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). Such motions are "designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013) (internal quotation marks omitted).

## MOTIONS *IN LIMINE*

**I.     MOTION *IN LIMINE* 1 – JOHN HOOKER'S MOTION TO EXCLUDE EVIDENCE OF HIS SALARY AND COMPENSATION**

John Hooker moves *in limine* to exclude evidence of his salary and compensation, including references to Mr. Hooker being a "highly paid" lobbyist and/or one of the highest paid external lobbyists at ComEd, pursuant to Federal Rules of Evidence 401, 402, and 403.

Mr. Hooker started at ComEd in the mail room in 1967. In 2002 he served as Senior Vice President of Legislative and External Affairs and in 2008, was promoted to Executive Vice President of Legislative and External Affairs. Mr. Hooker retired on March 1, 2012. Following his retirement, Mr. Hooker worked as an external lobbyist for ComEd until 2019.

Mr. Hooker's salary or compensation is irrelevant to the charges against him. None of the Government's allegations require this proof, nor is it probative of any elements of the offense. Even if the Court were to find that Mr. Hooker's salary/compensation is somehow relevant, its "probative value is substantially outweighed by a danger of … unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403. It would unfairly prejudice Mr. Hooker by having an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Old Chief,* 519 U.S. at 173. Presenting evidence of Mr. Hooker's salary and/or compensation could trigger "class prejudice" or otherwise poison the jury into finding Mr. Hooker guilty "on a ground different from proof specific" to the alleged conspiracy. *Id.* at 180; Fed. R. Evid. 401. Disclosing Mr. Hooker's salary and compensation would only serve to negatively inflame the passions of the jury against him.

In addition to a lack of relevance and unfair prejudice, evidence of Mr. Hooker's salary and compensation will likely result in undue delay and jury confusion. *See* Fed. R. Evid. 403. If such evidence is allowed, Mr. Hooker will undoubtedly spend considerable time proving how his salary and compensation were calculated during his lobbying career with ComEd, which spanned over three decades, how Mr. Hooker's salary and compensation compared to similarly situated

3

lobbyists, and how is it is not in any way related to the charged conduct. This is likely to confuse and distract the jurors on issues not even moderately probative of Mr. Hooker's participation in the alleged conspiracy. *See Martinez v. City of Chicago*, No. 14-cv-369, 2016 WL 3538823, at *5 (N.D. Ill. June 29, 2016) (emphasizing the Court's "unwillingness to allow the parties to create unnecessary sideshows and mini-trials on issues of little relevance"). Discussing these irrelevant issues at trial would take considerable time and effort despite the lack of any connection between Mr. Hooker's salary and the alleged conspiracy or other charges. The evidence is neither relevant nor probative to any issue of the case and highly prejudicial to Mr. Hooker.

## II. MOTION *IN LIMINE* 2 – JOHN HOOKER'S MOTION TO EXCLUDE SPECULATIVE TESTIMONY BY GOVERNMENT COOPERATOR FIDEL MARQUEZ

John Hooker moves *in limine* to exclude anticipated speculative testimony by Government cooperator Fidel Marquez pursuant to Federal Rules of Evidence 602 and 403.[2]

### a. Marquez's Grand Jury Testimony Summarizing the January 29, 2019, Recorded Conversation.

Marquez began cooperating against his co-workers on January 16, 2019, the same day the FBI contacted him about this case. As part of his cooperation, Marquez surreptitiously recorded conversations with his co-workers and associates. During a recorded call on January 22, 2019, Marquez asked Mr. Hooker to meet for lunch under the guise of seeking Mr. Hooker's advice about retiring from ComEd. On January 29, 2019, Mr. Hooker met Marquez for lunch. Marquez recorded this meeting. After a lengthy conversation, during which Mr. Hooker counseled Marquez about the transition from employee to retirement, Marquez interjected and asked Mr.

---

[2] This speculative evidence would also violate Federal Rule of Evidence 701 in that a lay witness's opinion testimony must be "rationally based on the witness's perception." Fed. R. Evid. 701.

4

Hooker's advice regarding how to explain the Jay D. Doherty and Associates ("JDDA") contract to the new CEO. Mr. Hooker ultimately suggested that Marquez prepare a write up about the subcontractors on the JDDA contract – who they are and what they do – to present to the new CEO when seeking his approval of the renewal of the JDDA contract. *See* Marquez's Grand Jury Test. at GJ_087-000168:20-21.

Marquez is expected to testify consistent with his Grand Jury testimony that Mr. Hooker's "suggestion surprised me because the Madigan associates did no real work, a fact that I **believe** was known to Hooker." *Id.* at 168:22-25. Based on this belief, Marquez further testified "[t]hus, I **believe** that Hooker was advising me to provide [the new CEO] with a fictitious document summarizing the work performed by the subcontractors. *Id.* at 169:1-4. As revealed by the emphasis added to the portions of Marquez's testimony above, Marquez has no personal knowledge as to whether Mr. Hooker knew that the "Madigan associates did no real work." In fact, Marquez did not testify at the grand jury that he ever even discussed the JDDA contract and the subcontractors with Mr. Hooker until Marquez recorded Mr. Hooker in 2019. Marquez's grand jury testimony substantiated this fact by confirming that he learned about the subcontractors from someone other than Mr. Hooker and that Mr. Hooker never "mentored" Marquez. *See id.* at 50:24-25, 68:5-7, 70:12-15, 79:15-18. Marquez's admitted "surprise" regarding Mr. Hooker's suggestion that he do a write up for the new CEO further underscores the speculative nature of Marquez's expected testimony with respect to what Mr. Hooker knew or intended. Cooperator Marquez's attempt to spin Hooker's suggestion into an illegal proposal should not be allowed. *See United States v. Thomas*, 155 F.3d 833, 835-36 (7th Cir. 1998 (finding the risk of unfair prejudice substantial where proffered evidence could permit the jury to make an improper inference of guilt).

5

## b. Testimony About the Alleged Reasons ComEd Renewed Mr. Hooker's External Lobbying Contract.

Marquez's Grand Jury testimony about the renewal of Mr. Hooker's external lobbying contract with ComEd for 2015 fares no better. It too is based on mere speculation and belief. Marquez testified "I do **believe** that the continuation of Hooker's contract … was motivated, at least in part, by a desire not to anger Madigan during the 2014 legislative session." Marquez Grand Jury Test. at 60:12-16 (emphasis added). Similarly, Marquez testified that he also "**believe**[d] that Exelon was concerned that if Hooker's contract was not renewed, Madigan would ignore Exelon's request for help with a resolution that called for a published study of the impact of closing nuclear power plants." *Id.* at 61:2-5. Later, Marquez repeated in the Grand Jury that he "**believe[d]** that Exelon … receded from efforts to terminate Hooker's contractual relationship with ComEd" and that it was the "passage of House Resolution 1146 that, I **believe**, caused Exelon, in general … to allow the renewal of Hooker's lobbying contract in 2014 to ensure the passage of House Resolution 1146." *Id.* at 149:16-24.

Marquez's Grand Jury testimony again makes clear that he lacked any personal knowledge and, at best, had only a hunch as to why ComEd renewed Mr. Hooker's contract for 2015. Even more, as Marquez admitted, he did not even know whether Madigan was aware of Hooker's contract issues, and he "did not necessarily confer that McClain was asking … for Hooker's contract renewal specifically on behalf of Madigan." *Id.* at 59:16-19, 21-23. "Reasonable inferences" do not include "speculating as to an [individual]'s state of mind, or other intuitions, hunches, or rumors." *See Widmar, 7772 F.3d at 460.*

Further complicating matters is that Marquez not only guesses about Madigan's involvement and ComEd's reasons for renewing Mr. Hooker's contract, but also about Exelon's reasons for allowing the renewal. Federal Rule of Evidence 602 prohibits Marquez's wildly

6

speculative testimony as evidence on a critical issue and allowing the Government to offer this testimony would substantially prejudice Mr. Hooker. Fed. R. Evid. 403. Further, Marquez's speculative testimony would confuse and potentially mislead the jury, as well as waste trial time and resources, as the parties would have to engage in a mini trial concerning the reasons for the renewal of Mr. Hooker's contract and whether Mr. Hooker, Madigan, and others, were even aware of these efforts. This sideshow would do nothing to resolve any material issues in the case. *See Martinez,* 2016 WL 3538823, at *5 (emphasizing the Court's "unwillingness to allow the parties to create unnecessary sideshows and mini trials on issues of little relevance").

### c. Testimony About the Fair Maps Initiative and Mr. Hooker's Role in Lawsuit Against the Fair Maps Initiative.

According to the *Santiago* Proffer (DKT. 112), the Government anticipates calling a witness who will "explain" legislative remapping and Michael Madigan's efforts to control remapping in Illinois to retain his power. This witness is expected to testify that in 2014, a group called the Fair Maps Initiative (the "Initiative") challenged the remapping process and that Madigan wanted the Initiative defeated. The witness is expected to testify that Mr. Hooker was a plaintiff in a lawsuit challenging the Initiative and that Mr. Hooker was represented by an attorney that was close to Madigan. It is also anticipated that Marquez, will testify about Mr. Hooker's role in the lawsuit.

The lawsuit and Mr. Hooker's personal decision to participate in the lawsuit are irrelevant to the charges against him, as is Madigan's alleged desire to defeat the lawsuit. No element that the Government must prove relies on Mr. Hooker being a plaintiff in the lawsuit. Further, any arguable probative value is outweighed by its prejudicial impact. Presenting evidence of remapping and Madigan's alleged efforts to thwart the remapping is very likely to inflame and otherwise poison the jury into finding Mr. Hooker guilty "on a ground different from proof

7

specific" to the alleged conspiracy, namely jurors' views on remapping and the inherent political biases and racial issues surrounding the controversy. *See Old Chief,* 519 U.S.172 at 180; Fed. R. Evid. 401.

Admission of this evidence will also result in undue delay and jury confusion. Lengthy testimony surrounding complicated remapping issues, their impact on Madigan's power base, and Mr. Hooker's personal reasons for participating in the lawsuit would take up a great deal of trial time and effort despite the lack of any connection to Mr. Hooker's role in the alleged conspiracy. In addition, such testimony is likely to confuse and distract the jurors on issues not even moderately probative of his participation in the alleged conspiracy. *See Martinez,* 2016 WL 3538823, at *5 (emphasizing the Court's "unwillingness to allow the parties to create unnecessary sideshows and mini-trials on issues of little relevance").

The Government may also call Marquez to speculate that Mr. Hooker's role as plaintiff in the lawsuit impacted the renewal of his ComEd lobbying contract for 2015. As already discussed above, Marquez has no personal knowledge regarding why ComEd renewed Mr. Hooker's contract for 2015. Regarding the lawsuit, Marquez testified in the Grand Jury that it was his "**understanding**" that Madigan asked [another individual] and Hooker to be the named plaintiffs in the lawsuit," and he '**believe**[s] that Hooker's role as plaintiff and spokesperson for this lawsuit impacted the decision to continue Hooker's contract." Marquez Grand Jury Test. at 62:20-22; 63:14-17. However, Marquez admits that he was not aware of any ComEd money used to support the lawsuit. *Id.* at 63:9-12. Further, Marquez based his belief on his interpretation of an email from McClain that Marquez said expressed McClain's concerns regarding Mr. Hooker's contract renewal. *See id.* at 64:10-22. Marquez makes highly prejudicial conclusions based on something other than personal knowledge and allowing such unreliable and prejudicial

8

testimony poses a grave danger of misleading the jury and confusing the issues. This is especially true considering cooperator Marquez's avalanche of unsupported "beliefs" surrounding the issue of ComEd's renewal of Mr. Hooker's lobbying contract for 2015 and the motivations of ComEd, Exelon, Madigan, McClain and others.

### III. MOTION *IN LIMINE* 3 – EVIDENCE REGARDING THE CANCELLATION OF JOHN HOOKER'S CONTRACT WITH COMED IN 2019

Mr. Hooker moves *in limine* to prohibit the introduction of any evidence regarding the cancellation of Mr. Hooker's external lobbyist contract with ComEd in 2019, specifically that Mr. Hooker's contract was not renewed because of the criminal investigation. Such evidence is not probative of the allegations in this case. Companies may terminate employees for a variety of reasons, including to distance themselves from individuals associated with a criminal investigation. For example, ComEd may have ended the employment relationship with Mr. Hooker and others to obtain its deferred prosecution agreement. This evidence invites speculation and is not pertinent to any issue in the case.

The highly prejudicial impact of the evidence warrants exclusion. The jury could impermissibly conclude that ComEd either found or believed Mr. Hooker did something wrong and therefore must be guilty of the criminal offense. This equates to improper propensity evidence. Moreover, this evidence would confuse and mislead the jury, require lengthy and detailed explanations, and result in a mini trial.

### IV. MOTION IN LIMINE 4 – RULE 404(B) EVIDENCE AGAINST CO-DEFENDANT MICHAEL MCCLAIN

Mr. Hooker asks that the Court preclude the Government from introducing Rule 404(b) against McClain at trial pursuant to Federal Rules of Evidence 401, 402, and 403. The Government intends to introduce evidence that co-defendant McClain allegedly acted as an agent

9

for Madigan on a variety of political and other matters and issues. One example allegedly had to do with gaming legislation pending before the Illinois General Assembly in 2018 and 2019 (the "Gaming Legislation Evidence"). The Government alleges that, at Madigan's behalf, Mr. McClain gave directions and advice to Madigan's staff and to the bill's sponsor, Representative Robert Rita. The Government claims this evidence demonstrates that Madigan delegated control over the direction of legislation to McClain, who directed government officials and employees on Madigan's behalf.

In addition, the Government intends to introduce evidence that McClain, on Madigan's behalf, arranged for monthly payments to be made to K.Q., a former Thirteenth Ward employee who had been accused of sexual harassment, to provide K.Q. with income until Madigan could take other steps to assist him. The Government asserts McClain asked others to make "consultant" payments to the employee, evidence demonstrating McClain's awareness of and intention behind using intermediaries to conceal the true nature of payments made for Madigan's benefit. (the "K.Q. Consultant Evidence")

Both the alleged Gaming Legislation Evidence and the alleged K.Q. Consulting Evidence would never be introduced in a prosecution of Mr. Hooker alone. It has no bearing on his alleged culpability, nor does it touch any specific action identified in the Indictment. Yet, introducing the evidence against McClain, with whom Mr. Hooker had contact, will very likely cause the jury to assume that actions McClain took with gaming and consulting prove Mr. Hooker guilty based on unrelated actions McClain took with Mr. Hooker. This is mere conjecture Mr. Hooker cannot rebut nor explain because events surrounding the alleged Gaming Legislation Evidence and the alleged K.Q. Consulting Evidence had nothing to do with Mr. Hooker.

10

In *United States v. Figueroa,* 618 F.2d 934, 944 (2d Cir. 1980), the Second Circuit states that there are limits to the risks a co-defendant must endure when charged by the Government in a joint trial. That should not automatically include the admissibility of other act evidence introduced against a co-defendant. "In some situations, the danger of unfair prejudice to co-defendants may be so great that the prosecution must be put to a choice of foregoing either the evidence or the joint trial." *Figueroa,* 618 F.2d at 946. Here, as in *Figueroa,* the Government does not suggest Mr. Hooker was involved in these other alleged criminal activities, yet, by introducing them, raises a distinct possibility the jury will infer Mr. Hooker is guilty based on the correctness of the prosecution's action against another defendant. *Figueroa*, 618 F.2d at 946.

In a joint trial, Federal Rule of Evidence 403 requires the Court to weigh not only the value of the evidence against the danger of unfair prejudice against whom the Government introduces the evidence, but also the possible "spillover" prejudice that may unfairly prejudice co-defendants. *United States v. Davis,* 838 F.2d 909, 916 (7th Cir. 1988); *See also United States v. Rosenwasser,* 550 F.2d 934, 944 (2d Cir. 1980); *Cf. Zafiro v. United States,* 506 U.S. 534, 539 (1993) (noting how evidence of a co-defendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant is guilty). In this case, the Government chose to take advantage of joinder to try multiple defendants in a single trial. Having done so, it should not be allowed now to introduce evidence highly prejudicial to co-defendants.

## **CONCLUSION**

For the above reasons, John Hooker respectfully asks this court to preclude the Government from introducing evidence, testimony, or argument regarding: (1) Mr. Hooker's salary and compensation from ComEd; (2) Anticipated speculative testimony by Government

cooperator and witness Marquez; (3) The cancellation of Mr. Hooker's contract with ComEd in 2019; and (4) Rule 404(b) evidence against co-defendant McClain.

                                    Respectfully submitted,
                                    Monico & Spevack

                                  By: <u>/s/Jacqueline S. Jacobson</u>
                                  Michael D. Monico
                                  Barry Spevack
                                  Jacqueline S. Jacobson
                                  Ryan Mitsos
                                  Monico & Spevack, LLC
                                  53 W. Jackson Blvd., Suite 1315
                                  Chicago, Illinois 60604
                                  Telephone: (312) 782-8500
                                  jjacobson@monicolaw.com
                                  mm@monicolaw.com
                                  bspevack@monicolaw.com
                                  rmitsos@monicolaw.com


                                  Susan Pavlow
                                  Law Office of Susan M. Pavlow
                                  53 W. Jackson Blvd., Suite 1215
                                  Chicago, Illinois 60604
                                  Telephone: (312) 322-0094
                                  smpavlow@mac.com

                                  *Attorneys for John Hooker*

Dated February 6, 2023

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of February, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Ryan W. Mitsos
Monico & Spevack, LLC
53 W. Jackson Blvd., Suite 1315
Chicago, Illinois 60604
(312) 782-8500
