**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

UNITED STATES OF AMERICA )
)
v. ) No. 20 CR 812
)
MICHAEL McCLAIN, et al. ) Honorable Harry D. Leinenweber
)

**DEFENDANT ANNE PRAMAGGIORE'S**
**CONSOLIDATED MOTIONS *IN LIMINE***

## TABLE OF CONTENTS

LEGAL STANDARD..................................................................................................2

MOTIONS *IN LIMINE* ..........................................................................................3

I.   MOTION *IN LIMINE* NO. 1: DEFENDANTS' JOINT MOTION TO EXCLUDE
     EVIDENCE OR ARGUMENT CONCERNING THE DEFERRED
     PROSECUTION AGREEMENT .......................................................................3

II.  MOTION *IN LIMINE* NO. 2: DEFENDANT ANNE PRAMAGGIORE'S
     MOTION TO EXCLUDE EVIDENCE OF THE CIRCUMSTANCES OF HER
     DEPARTURE FROM EXELON.........................................................................5

     A.   Ms. Pramaggiore's Resignation from Exelon Is Irrelevant. ...........................6

     B.   Even If the Court Found the Circumstances of Ms. Pramaggiore's Resignation
          Relevant, They Are Unfairly Prejudicial.......................................................7

III. MOTION *IN LIMINE* NO. 3: DEFENDANTS' JOINT MOTION TO EXCLUDE
     EVIDENCE OR ARGUMENT CONCERNING THE CIRCUMSTANCES OF
     THE DEPARTURES OR TERMINATIONS OF DEFENDANT DOHERTY'S
     SUBCONTRACTORS, REYES KURSON, AND JUAN OCHOA ...................9

     A.   The Circumstances of These Departures or Terminations Are Irrelevant.......9

     B.   The Circumstances of These Departures or Terminations Are Also Unfairly
          Prejudicial, Could Confuse and Mislead the Jury, and Would Waste Time. ...............10

IV.  MOTION *IN LIMINE* NO. 4: DEFENDANT PRAMAGGIORE'S MOTION TO
     EXCLUDE EVIDENCE OF HER COMPENSATION AND FINANCIAL
     CIRCUMSTANCES .......................................................................................11

     A.   Ms. Pramaggiore's Financial Circumstances Are Irrelevant to the Charges She
          Faces. .......................................................................................................11

     B.   Even If the Court Found Ms. Pramaggiore's Financial Circumstances Relevant,
          They Are Unfairly Prejudicial. ..................................................................12

     C.   Evidence of Ms. Pramaggiore's Compensation or Financial Position Would
          Cause Undue Delay, Confuse the Jury, and Waste Time................................14

V.   MOTION *IN LIMINE* NO. 5: DEFENDANTS PRAMAGGIORE AND
     HOOKER'S MOTION TO EXCLUDE DRAFT STATEMENT WRITTEN BY
     KEISHA PARKER .........................................................................................15

     A.   Background...............................................................................................15

i

B.   Ms. Parker's Draft Is Irrelevant to the Charges Defendants Are Facing......................15

C.   Even If the Court Found Ms. Parker's Remarks Relevant, They Are Unfairly
     Prejudicial. ...................................................................................................................16

VI.   MOTION *IN LIMINE* NO. 6: DEFENDANTS PRAMAGGIORE AND
      HOOKER'S MOTION TO EXCLUDE HEARSAY STATEMENTS MADE BY A
      GOVERNMENT INFORMANT........................................................................................17

A.   Mr. Marquez Was Not a Conspirator in the Alleged Conspiracy at the Time of
     the Recordings. ..............................................................................................................18

B.   Mr. Marquez's Statements Are Also Unreliable and Vague, and Allowing the
     Jury To Hear Them Would Prejudice Ms. Pramaggiore and Mr. Hooker....................20

VII.  MOTION *IN LIMINE* NO. 7: DEFENDANTS McCLAIN, PRAMAGGIORE,
      AND HOOKER'S JOINT MOTION TO EXCLUDE EVIDENCE OR
      ARGUMENT CONCERNING CERTAIN CAMPAIGN CONTRIBUTIONS..................20

A.   Evidence of Such Campaign Contributions Is Irrelevant Because the Indictment
     Charges Illegal Efforts to Influence Madigan. .............................................................21

B.   Evidence of Such Campaign Contributions Is Unfairly Prejudicial and Would
     Confuse the Jury. ...........................................................................................................22

VIII. MOTION *IN LIMINE* NO. 8: DEFENDANTS' *UNOPPOSED* JOINT MOTION
      TO EXCLUDE EVIDENCE OR ARGUMENT CONCERNING THE BURKE
      FUNDRAISER ................................................................................................................23

CONCLUSION..........................................................................................................................23

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Adams Labs., Inc. v. Jacobs Eng'g Co.*,
    761 F.2d 1218 (7th Cir. 1985) ...............................................................................13

*Berry v. Transp. Distrib. Co.*,
    2013 WL 6271605 (N.D. Okla. Dec. 4, 2013).................................................7, 10

*Carlson v. Bukovic*,
    2009 WL 1286004 (N.D. Ill. May 4, 2009)...............................................7, 8, 10

*Cent. Die Casting & Mfg.*,
    1998 WL 812558 (N.D. Ill. Nov. 19, 1998) ..........................................................13

*Crawford v. City of Bakersfield*,
    2016 WL 5870209 (E.D. Cal. Oct. 6, 2016) ...................................................7, 10

*Davis v. ROCOR Int'l*,
    226 F. Supp. 2d 839 (S.D. Miss. 2002)...........................................................7, 10

*Dowling v. United States*,
    493 U.S. 342 (1990).................................................................................................2

*Drummond Am. LLC v. Share Corp.*,
    2010 WL 11565160 (D. Conn. Jan. 22, 2010)......................................................4

*Fed. Election Comm'n v. Cruz*,
    142 S. Ct. 1638 (2022)..........................................................................................21

*Firemen's Fund Ins. Co. v. Thien*,
    63 F.3d 754 (8th Cir. 1995) ...................................................................................9

*French v. Amsleep, Inc.*,
    2003 WL 120859 (N.D. Ill. Jan. 14, 2003) .........................................................13

*In re Gen. Motors LLC Ignition Switch Litig.*,
    2015 WL 9165341 (S.D.N.Y. Dec. 16, 2015) ...............................................3, 4, 5

*Gumwood HP Shopping Partners, L.P. v. Simon Prop. Grp., Inc.*,
    2016 WL 10706086 (N.D. Ind. Oct. 28, 2016).....................................................14

*Louzon v. Ford Motor Co.*,
    718 F.3d 556 (6th Cir. 2013) ..................................................................................3

*Luce v. United States*,
469 U.S. 38 (1984)................................................................................................2

*Lyles v. Gambino*,
2019 WL 5654227 (N.D. Ill. Oct. 31, 2019)........................................................8

*Martinez v. City of Chicago*,
2016 WL 3538823 (N.D. Ill. June 29, 2016)........................................5, 9, 10, 14

*Nicholson v. Biomet, Inc.*,
2020 WL 8373400 (N.D. Iowa Oct. 22, 2020) .....................................................3

*Old Chief v. United States*,
519 U.S. 172 (1997)...................................................................................... *passim*

*Opio v. Wurr*,
901 F. Supp. 1370 (N.D. Ill. 1995)......................................................................13

*Pucci v. Litwin*,
1993 WL 405448 (N.D. Ill. Oct. 4, 1993)...........................................................14

*Sec. State Bank v. Baty*,
439 F.2d 910 (10th Cir. 1971) ...............................................................................2

*SEC v. Goldstone*,
2016 WL 3654273 (D.N.M. June 13, 2016).........................................................13

*Smith v. Toyota Motor Corp.*,
2018 WL 1806698 (E.D. Mo. Apr. 17, 2018)........................................................5

*Stehn v. Cody*,
74 F. Supp. 3d 140 (D.D.C. 2014).........................................................................4

*Tessendorf v. First Colony Life Ins. Co.*,
1992 WL 349645 (N.D. Ill. Nov. 13, 1992) ........................................................14

*Thompson v. City of Chicago*,
472 F.3d 444 (7th Cir. 2006) ................................................................5, 8, 10, 16

*Townsend v. Benya*,
287 F. Supp. 2d 868 (N.D. Ill. 2003) ...................................................................13

*United States v. Allen*,
10 F.3d 405 (7th Cir. 1993)..................................................................................21

*United States v. Alrub*,
160 F. Supp. 2d 988 (N.D. Ill. 2001) ...................................................................19

*United States v. Ayala*,
  601 F.3d 256 (4th Cir. 2010) ................................................................................19

*United States v. Darden*,
  70 F.3d 1507 (8th Cir. 1995) ...............................................................................18

*United States v. Hawley*,
  562 F. Supp. 2d 1017 (N.D. Iowa 2008) ..............................................................12

*United States v. Jackson-Randolph*,
  282 F.3d 369 (6th Cir. 2002) ...............................................................................12

*United States v. Mahkimetas*,
  991 F.2d 379 (7th Cir. 1993) ..........................................................................18, 19

*United States v. Martin*,
  195 F.3d 961 (7th Cir. 1999) ...............................................................................21

*United States v. Mitchell*,
  172 F.3d 1104 (9th Cir. 1999) .............................................................................12

*United States v. Molina*,
  1989 WL 85011 (N.D. Ill. July 20, 1989) ............................................................19

*United States v. Nava-Salazar*,
  735 F. Supp. 274 (N.D. Ill. 1990) ........................................................................19

*United States v. Rollins*,
  862 F.2d 1282 (7th Cir. 1988) .............................................................................18

*United States v. Smith*,
  578 F.2d 1227 (8th Cir. 1978) ........................................................................19, 20

*United States v. Socony-Vacuum Oil Co.*,
  310 U.S. 150 (1940) .........................................................................................12, 13

*United States v. Stahl*,
  616 F.2d 30 (2d Cir. 1980) ..............................................................................13, 14

*United States v. Thomas*,
  155 F.3d 833 (7th Cir. 1998) ........................................................................7, 8, 10

*United States v. Turner*,
  2014 WL 4699708 (N.D. Ill. Sept. 22, 2014) ......................................................18

*United States v. Williams*,
  740 F.3d 308 (4th Cir. 2014) ...........................................................................4, 22

*United States v. Williamson*,
    53 F.3d 1500 (10th Cir. 1995) ................................................................................................19

*Valdez v. Lowry*,
    2021 WL 5769533 (N.D. Ill. Dec. 5, 2021)........................................................................6, 10

*Wielgus v. Ryobi Techs., Inc.*,
    2012 WL 1853090 (N.D. Ill. May 21, 2012) .........................................................................13

## Other Authorities

Fed. R. Evid. 401 ....................................................................................................... *passim*

Fed. R. Evid. 402 ....................................................................................................... *passim*

Fed. R. Evid. 403 ....................................................................................................... *passim*

Fed. R. Evid. 801 ...............................................................................................................18, 19

Fed. R. Evid. 802 .....................................................................................................................18

Seventh Circuit Pattern Criminal Jury Instructions, Committee Comment to 18
    U.S.C. § 666(a)(2) PAYING A BRIBE.................................................................................22

Defendant Anne Pramaggiore, through her undersigned counsel, respectfully requests that the Court enter an order precluding evidence or argument concerning the following at trial:

(1) the Deferred Prosecution Agreement between the United States Attorney for the Northern District of Illinois and Commonwealth Edison Company dated July 16, 2020;[1]

(2) the circumstances of Ms. Pramaggiore's departure from her roles as CEO of Exelon Utilities and Senior Executive Vice President of Exelon Corporation on October 15, 2019;

(3) the circumstances of the departures or terminations of Defendant Doherty's subcontractors, Reyes Kurson, and Juan Ochoa;

(4) Ms. Pramaggiore's compensation and financial circumstances;

(5) the draft introductory remarks written by Keisha Parker about Michael J. Madigan for Ms. Pramaggiore for a September 18, 2012 fundraiser;[2]

(6) hearsay statements made by Fidel Marquez while he was acting as a Government informant;[3]

(7) campaign contributions from ComEd, Exelon, or personnel of ComEd or Exelon to Michael J. Madigan, Friends of Michael J. Madigan, or the Democratic Party of Illinois;[4] and

---

[1] Motions *in limine* numbers 1, 3, and 8 are joint motions by Defendants Michael McClain, Anne Pramaggiore, John Hooker, and Jay Doherty.

[2] Defendant John Hooker joins motion *in limine* number 5.

[3] Defendant John Hooker joins motion *in limine* number 6.

[4] Defendants John Hooker and Michael McClain join motion *in limine* number 7.

(8)  a fundraiser for former City of Chicago Alderman Ed Burke, referenced in the recording
TP20 Session 15198 (July 28, 2018).[5]

## LEGAL STANDARD

Under Federal Rule of Evidence 401, evidence is relevant only if it has the tendency to
make the existence of any fact that is of consequence to the determination of the action "more or
less probable than it would be without the evidence."  Fed. R. Evid. 401.  "Relevancy is a
threshold inquiry," and irrelevant evidence is inadmissible.  *Dowling v. United States*, 493 U.S.
342, 350-51 n.3 (1990); Fed. R. Evid. 402.  Even if relevant, evidence nonetheless may be
excluded under Federal Rule of Evidence 403 "if its probative value is substantially outweighed
by a danger of one or more of the following: unfair prejudice, confusing the issues, [or]
misleading the jury. . . ."  Fed. R. Evid. 403.  "Unfair prejudice" under Rule 403 "means an
undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an
emotional one."  *Old Chief v. United States*, 519 U.S. 172, 180 (1997) (quoting Fed. R. Evid. 403
advisory committee notes).  The Court has broad discretion on admissibility and "has not only
the discretion but also the duty to exclude evidence of little or no relevance or probative value
which might have a prejudicial effect."  *Sec. State Bank v. Baty*, 439 F.2d 910, 913 (10th Cir.
1971).

A motion *in limine* seeks to "exclude anticipated prejudicial evidence before the evidence
is actually offered."  *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984).  Such motions are
"designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial

---

[5] The Government does not oppose this motion *in limine*.  *See* Email from Sarah Streicker, USAILN, to
defense counsel (Jan. 27, 2023, 7:08 PM CST).  Ms. Pramaggiore includes this motion in her consolidated
motion to memorialize it on the docket.

interruptions." *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013) (internal quotation marks omitted).

## MOTIONS *IN LIMINE*

I.  **MOTION *IN LIMINE* NO. 1: DEFENDANTS' JOINT MOTION TO EXCLUDE EVIDENCE OR ARGUMENT CONCERNING THE DEFERRED PROSECUTION AGREEMENT**

Defendants Michael McClain, Anne Pramaggiore, John Hooker, and Jay Doherty (collectively, "Defendants") respectfully move for the exclusion of evidence or argument concerning the Deferred Prosecution Agreement ("DPA") between the United States Attorney for the Northern District of Illinois and Commonwealth Edison Company ("ComEd").  On July 16, 2020, ComEd entered into the DPA with the Government related to a criminal information charging ComEd with a violation of 18 U.S.C. § 666(a)(2).  *United States v. Commonwealth Edison Co.*, 1:20-cr-00368 (N.D. Ill.), Dkt. No. 3 ("DPA") ¶ 2.  In the DPA, the Government and ComEd agreed "that the appropriate total criminal penalty is $200,000,000."  (*Id.* ¶ 10.)

The fact that the DPA was entered into, the reasons that ComEd entered into the DPA, and the statements contained in the DPA are of no relevance to this case.  *Nicholson v. Biomet, Inc.*, 2020 WL 8373400, at *4-5 (N.D. Iowa Oct. 22, 2020) (granting defendants' motion *in limine* to exclude evidence concerning two deferred prosecution agreements because "[e]vidence of the DPAs is irrelevant").  None of the Defendants in this case entered into or adopted the DPA.  Rather, the DPA is an agreement solely between the Government and ComEd.[6]  Whatever

---

[6] *Cf. In re Gen. Motors LLC Ignition Switch Litig.*, 2015 WL 9165341, at *2 (S.D.N.Y. Dec. 16, 2015) (allowing only certain parts of the DPA's statement of facts, and no other portion of the DPA, where "[a]s [defendant] concedes the SOF is different, *as it is indisputably a statement by [defendant]* and contains admissions about the ignition switch defect, [defendant]'s notice and knowledge thereof, and [defendant]'s failure to address the defect that are highly relevant to facts of consequence at trial.  Put simply, the SOF contains [defendant]'s *own* admissions, and Plaintiff is entitled to use it.") (emphases added) (cleaned up).

*ComEd* "admit[ted], accept[ed], and acknowledge[d] that it is responsible" for in the DPA is simply not an admission of *Defendants*. (DPA ¶ 2.) For this reason, any evidence or argument regarding the statements in the DPA is irrelevant and would only be offered to improperly suggest that the company's statements are statements made by Defendants in this case or that the fact that ComEd entered into the DPA proves that ComEd believes that Defendants are guilty.

Even if the DPA were relevant—which it is not—evidence and argument concerning the DPA and its contents should be excluded as unfairly prejudicial and confusing for the jury. *See* Fed. R. Evid. 403; *United States v. Williams*, 740 F.3d 308, 314 (4th Cir. 2014) ("Unfair prejudice exists when there is a genuine risk that the emotions of a jury will be excited to irrational behavior, and this risk is disproportionate to the probative value of the offered evidence.") (internal quotation marks omitted). Allowing the jury to learn of ComEd's agreement to pay $200 million would severely prejudice Defendants because jurors may conclude that ComEd thought that its officers committed a very serious crime if they paid a $200 million fine. *See Stehn v. Cody*, 74 F. Supp. 3d 140, 147-48 (D.D.C. 2014) (excluding statement regarding Defendant's payment of a fine because of risks of jury confusion and unfair prejudice); *see also Drummond Am. LLC v. Share Corp.*, 2010 WL 11565160, at *2 (D. Conn. Jan. 22, 2010) (granting motion *in limine* to exclude existence or terms of DPA because such evidence is "irrelevant to this case and potentially prejudicial"); *see also In re Gen. Motors LLC Ignition Switch Litig.*, 2015 WL 9165341, at *1 (explaining that admission of the DPA could "invite the jury to impermissibly base its verdict on the fact that [defendant] was the subject of criminal proceedings"). Jurors also may mistake ComEd's decision to enter the DPA for evidence of Defendants' guilt and be unfairly influenced accordingly, with the compounded potential for still further prejudice based on jurors' negative feelings about Defendants' decision to exercise their

constitutional right to a trial. *See Thompson v. City of Chicago*, 472 F.3d 444, 456-57 (7th Cir. 2006) ("Evidence is considered unfairly prejudicial . . . [when] its admission makes it likely that the jury will be induced to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented.").

Moreover, introduction of evidence or argument concerning the DPA risks misleading jurors by confusing and merging the facts of this case with the circumstances that prompted the DPA, which likely include factors irrelevant to the determination of Defendants' guilt or innocence, such as ComEd's desire to avoid the protracted bad publicity that would come with contested criminal proceedings. Such a situation would unfairly prejudice Defendants, compelling them to explain those circumstances in a distracting and time-wasting sideshow. *See In re Gen. Motors LLC Ignition Switch Litig.*, 2015 WL 9165341, at *1 (recognizing that introducing evidence of the DPA would compel the defendant to explain the circumstances of the criminal investigation and its resolution, "all of which would be a sideshow to the main event"); *see also Martinez v. City of Chicago*, 2016 WL 3538823, at *5 (N.D. Ill. June 29, 2016) (emphasizing the Court's "unwillingness to allow the parties to create unnecessary sideshows and mini-trials on issues of little relevance"); *see also Smith v. Toyota Motor Corp.*, 2018 WL 1806698, at *5 (E.D. Mo. Apr. 17, 2018) (granting motion *in limine* to exclude DPA). Rule 403 is designed to prevent such confusion and unfairness. *See* Fed. R. Evid. 403. Evidence and argument concerning the DPA therefore has no place in this trial and should be excluded.

## II.  MOTION *IN LIMINE* NO. 2: DEFENDANT ANNE PRAMAGGIORE'S MOTION TO EXCLUDE EVIDENCE OF THE CIRCUMSTANCES OF HER DEPARTURE FROM EXELON

Defendant Pramaggiore moves *in limine* for an order excluding the introduction of any argument or evidence concerning the circumstances surrounding her resignation as CEO of Exelon Utilities and Senior Executive Vice President of Exelon Corporation (collectively,

"Exelon") on October 15, 2019,[7] less than one week after Exelon and ComEd acknowledged receipt of a second subpoena in a federal probe into Illinois state lobbying.

Ms. Pramaggiore's resignation from Exelon is not relevant to the matters alleged in the indictment. Rather than establishing her guilt or innocence, it has the potential to substantially inflame and prejudice the jury against her by inviting jurors to improperly infer that her resignation and its timing make her culpable of the charges against her. It also risks confusing the jury and wasting resources by necessitating mini-trials within the trial as to the circumstances of her departure. In light of its irrelevant, confusing, and highly prejudicial nature, evidence of the facts and circumstances surrounding Ms. Pramaggiore's resignation should be excluded at trial.

### A.    Ms. Pramaggiore's Resignation from Exelon Is Irrelevant.

The fact that Ms. Pramaggiore resigned from Exelon has no bearing on whether or not she is culpable of the bribery, conspiracy, and false books and records charges she faces; therefore, evidence concerning her resignation is irrelevant. *See* Fed. R. Evid. 401. Her departure has no tendency to make a fact of consequence in this action "more or less probable," and cessation of her employment is not an element of any of the charges against her. *Id.* Nor, for that matter, does such evidence speak to her motive or any potential defenses.

Courts routinely exclude evidence concerning a defendant's departure from an employer as irrelevant to the question of their culpability for conduct, including conduct that took place on the job. *See, e.g.*, *Valdez v. Lowry*, 2021 WL 5769533, at *9 (N.D. Ill. Dec. 5, 2021) (granting motion to exclude evidence of why officer defendant retired because the reasons for his retirement, although partially stemming from the alleged excessive force encounter, were "not

---

[7] *See* Indictment at 9 ¶ 1(w).

relevant to the material issues," *i.e.*, probable cause and reasonableness of force); *Crawford v. City of Bakersfield*, 2016 WL 5870209, at *6 (E.D. Cal. Oct. 6, 2016) (excluding evidence that defendant was terminated from police department following alleged wrongful death because it "does not make any fact at issue in this action more or less probable"); *Berry v. Transp. Distrib. Co.*, 2013 WL 6271605, at *5 (N.D. Okla. Dec. 4, 2013) (granting motion *in limine* to exclude evidence of the circumstances of the defendant truck driver's resignation following car accident as irrelevant to his culpability for negligence in the accident); *Carlson v. Bukovic*, 2009 WL 1286004, at *2 (N.D. Ill. May 4, 2009) (granting motion *in limine* to exclude evidence of officer's departure from police force following alleged unlawful seizure as "substantially more prejudicial than probative"); *Davis v. ROCOR Int'l*, 226 F. Supp. 2d 839, 844-45 (S.D. Miss. 2002) (granting motion *in limine* to exclude evidence of defendant truck driver's departure from his employer as not relevant to whether he was negligent at the time of his motor vehicle accident). Evidence concerning the circumstances of Ms. Pramaggiore's resignation therefore should be excluded as irrelevant. *See* Fed. R. Evid. 402.

      **B.    Even If the Court Found the Circumstances of Ms. Pramaggiore's Resignation Relevant, They Are Unfairly Prejudicial.**

Even if the evidence concerning Ms. Pramaggiore's resignation were relevant, it is too prejudicial to admit. This evidence would invite the jury to impermissibly conclude that Ms. Pramaggiore resigned because she was *culpable* of the conduct alleged in the indictment. *See Davis*, 226 F. Supp. 2d at 844 (excluding evidence pertaining to truck driver's departure from employment following motor vehicle collision as unduly prejudicial because jury might "impermissibly conclude that he was terminated/resigned because he was at fault for the collision"); *United States v. Thomas*, 155 F.3d 833, 835-36 (7th Cir. 1998) (finding the risk of unfair prejudice substantial where proffered evidence could permit jury to make improper

7

inference of guilt).  The risk that jurors will make impermissible conclusions is especially salient here because the resignation occurred less than one week after Exelon and ComEd acknowledged they had received a second subpoena in a federal probe into Illinois state lobbying.[8]

Further, juries may fail to comprehend that workplaces do not adjudge criminal fault and lack the procedural protections and standards of proof required in the judicial system.  *See Thomas*, 155 F.3d at 835-36.  Therefore the suggestion of an adverse employment decision is far more prejudicial than probative.  *See, e.g.*, *Lyles v. Gambino*, 2019 WL 5654227, at *6 (N.D. Ill. Oct. 31, 2019) (excluding evidence of workplace investigation and its findings on defendants because potential prejudice substantially outweighed the limited probative value); *Carlson*, 2009 WL 1286004, at *2 (finding evidence of officer's departure from police following allegedly unlawful seizure more prejudicial than probative).

Evidence of the circumstances of Ms. Pramaggiore's resignation also risks jurors forming unflattering opinions of her based on prejudices relating to her resignation and then improperly relying on those opinions when evaluating her culpability.  *See Thompson*, 472 F.3d at 456-57. Such evidence thus has no place in her trial.  *See* Fed. R. Evid. 403.

Not only would evidence related to Ms. Pramaggiore's resignation confuse and potentially mislead the jury, it would also waste the Court's, the jury's, and the parties' time and resources as the parties inevitably engage in mini-trials within the trial concerning the circumstances of Ms. Pramaggiore's resignation and its timing.  Such a sideshow would do

---

[8] *See, e.g.*, Ray Long and Jason Meisner, CHICAGO TRIBUNE, "Exelon Utilities CEO Anne Pramaggiore abruptly retires amid federal probe into Illinois lobbying," (Oct. 16, 2019, 6:35 AM), https://www.chicagotribune.com/investigations/ct-exelon-comed-anne-pramaggiore-retires-lobbying-federal-probe-20191015-2qqd7zmp4fbmlg7q365ktjduke-story.html.

nothing to resolve any material issues in the case and would be confusing and unnecessary. *Martinez*, 2016 WL 3538823, at \*5 (emphasizing the Court's "unwillingness to allow the parties to create unnecessary sideshows and mini-trials on issues of little relevance"). Evidence concerning the circumstances of Ms. Pramaggiore's resignation therefore should be excluded to avert this result. *See Firemen's Fund Ins. Co. v. Thien,* 63 F.3d 754, 759 (8th Cir. 1995) (finding that evidence may be excluded when it leads to litigation of collateral issues).

III.    **MOTION *IN LIMINE* NO. 3: DEFENDANTS' JOINT MOTION TO EXCLUDE EVIDENCE OR ARGUMENT CONCERNING THE CIRCUMSTANCES OF THE DEPARTURES OR TERMINATIONS OF DEFENDANT DOHERTY'S SUBCONTRACTORS, REYES KURSON, AND JUAN OCHOA**

Defendants move *in limine* for an order excluding evidence or argument concerning the departures or terminations of Defendant Doherty's subcontractors, Reyes Kurson, and Juan Ochoa from ComEd. These departures or terminations are irrelevant to the allegations in the indictment and do not bear on any Defendant's guilt or innocence. They risk prejudicing the jury against Defendants because the jury may improperly infer that these departures or terminations relate to Defendants' criminal culpability as opposed to independent, non-legal decisions by their employer lacking any of the safeguards of due process. These departures or terminations may have been the result of an effort by ComEd to try to please the Government or prevent reputational damage to ComEd. Admitting such evidence would also necessitate mini-trials within the already lengthy trial to explain the circumstances of each departure or termination. Evidence of the facts and circumstances surrounding these departures or terminations should therefore be excluded.

A.      **The Circumstances of These Departures or Terminations Are Irrelevant.**

The circumstances of these departures or terminations, which were independent decisions by the individual or their employer or client, have no bearing on whether or not *Defendants* are

guilty of the charges against them.  Such evidence is therefore irrelevant.  *See* Fed. R. Evid. 401.
The departure or termination of Defendant Doherty's subcontractors, Reyes Kurson, and Juan
Ochoa is neither an element of any of the charges against Defendants, nor does such evidence
speak to any Defendant's motive or any potential defenses.  Again, courts routinely exclude
evidence concerning resignations or terminations as irrelevant.  *See, e.g.*, *Valdez*, 2021 WL
5769533, at *9; *Crawford*, 2016 WL 5870209, at *6; *Berry*, 2013 WL 6271605, at *5; *Carlson*,
2009 WL 1286004, at *2; *Davis*, 226 F. Supp. 2d at 844-45.  This Court should do the same.

**B.**     **The Circumstances of These Departures or Terminations Are Also Unfairly Prejudicial, Could Confuse and Mislead the Jury, and Would Waste Time.**

Evidence concerning these departures or terminations is also too prejudicial to admit
because it would invite the jury to impermissibly conclude that Defendant Doherty's
subcontractors, Reyes Kurson, and Juan Ochoa ceased working for ComEd because Defendants
were guilty of the conduct alleged in the indictment.  *See Thomas*, 155 F.3d at 835-36 (finding
the risk of unfair prejudice substantial where proffered evidence could permit jury to make
improper inference of guilt).  Again, juries may fail to comprehend that determinations by
employers do not equate to criminal fault and lack the constitutional safeguards that the judicial
system requires.  Admitting such evidence may also cause jurors to form unflattering opinions of
Defendants and then improperly rely on those opinions when evaluating their culpability.  *See*
*Thompson*, 472 F.3d at 456-57.

Admitting this evidence would also waste time and resources during an already lengthy
trial as the parties inevitably engage in mini-trials concerning the circumstances of each
departure and termination and whether it was warranted.  Such a sideshow would do nothing to
resolve any material issues in the case and would be confusing and unnecessary.  *Martinez*, 2016

10

WL 3538823, at *5 (emphasizing the Court's "unwillingness to allow the parties to create unnecessary sideshows and mini-trials on issues of little relevance").

IV.   **MOTION _IN LIMINE_ NO. 4: DEFENDANT PRAMAGGIORE'S MOTION TO EXCLUDE EVIDENCE OF HER COMPENSATION AND FINANCIAL CIRCUMSTANCES**

Defendant Pramaggiore moves _in limine_ for an order excluding any evidence, testimony, or argument regarding her financial circumstances, including her personal wealth, compensation, or assets.  From March 2012 to May 2018, Ms. Pramaggiore served as CEO of ComEd, after which she was promoted to CEO of Exelon Utilities and Senior Executive Vice President of Exelon Corporate ("Exelon") from June 2018 to October 2019.[9]  The compensation she received from these positions has no bearing on the elements of her charged offenses.  If her financial circumstances were disclosed, it could unfairly prejudice the jury against her.  Indeed financial evidence is routinely excluded from criminal and civil cases for precisely this reason.  Further, the introduction of financial evidence risks derailing the trial as it would force the parties to present competing evidence to establish how Ms. Pramaggiore's compensation was calculated, how her compensation compared with that of peer business executives, and the absence of any connection between her financial circumstances and any of the alleged charges.  The Court therefore should exclude evidence of Ms. Pramaggiore's compensation and financial circumstances.

A.   **Ms. Pramaggiore's Financial Circumstances Are Irrelevant to the Charges She Faces.**

Evidence of Ms. Pramaggiore's salary and wealth is irrelevant.  No element that the Government must prove relies upon the state of her personal finances.  _See_ Fed. R. Evid. 401.

---

[9] _See_ Indictment at 9 ¶ 1(w).

Nor, for that matter, is such evidence probative of a potential motive. *See, e.g.*, *United States v. Mitchell*, 172 F.3d 1104, 1108-09 (9th Cir. 1999) ("A rich man's greed is as much a motive to steal as a poor man's poverty. Proof of either, without more, is likely to amount to a great deal of unfair prejudice with little probative value."); *United States v. Jackson-Randolph*, 282 F.3d 369, 378 (6th Cir. 2002) (finding wealth as an asserted motive to commit a crime "ignores the real possibility that" a defendant's wealth "was made possible by legitimate means and, if so, the introduction of such evidence would appeal solely to class prejudice").

Absent a relationship between Ms. Pramaggiore's financial circumstances and the charges alleged, there is no legitimate basis for offering evidence of her wealth or compensation at trial. Rules 401 and 402 dictate that such evidence must be excluded. *See* Fed. R. Evid. 401; Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

### B. Even If the Court Found Ms. Pramaggiore's Financial Circumstances Relevant, They Are Unfairly Prejudicial.

Even if relevant, introducing Ms. Pramaggiore's financial circumstances would have an unfairly prejudicial effect. Under Rule 403, even relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Here, evidence of Ms. Pramaggiore's compensation and financial circumstances risks infecting jurors' view of the evidence by playing into class bias and triggering unwarranted, negative associations. *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 239 (1940); *see also United States v. Hawley*, 562 F. Supp. 2d 1017, 1034 (N.D. Iowa 2008) (finding evidence of "income and financial condition . . . has a greater tendency to invite the jury to find against [a defendant] because of his wealth or because the jury believes that he is overpaid[.]"). This may

lead jurors to rule based on an improper, emotional basis rather than on the evidence before

them. *See Old Chief*, 519 U.S. at 180-81. As a consequence, appeals to class prejudice are

"highly improper" and have "no place in a courtroom." *Socony-Vacuum Oil Co.*, 310 U.S. at

239; *United States v. Stahl*, 616 F.2d 30, 32-33 (2d Cir. 1980) (explaining that the court was

"compelled to reverse" based on the prosecutor's improper class prejudice appeals); *Adams

Labs., Inc. v. Jacobs Eng'g Co.*, 761 F.2d 1218, 1226 (7th Cir. 1985) (holding that statements

which appeal to jurors' emotions by comparing the wealth of the parties are improper). "[T]rial

courts should ever be alert to prevent them." *Socony-Vacuum Oil Co.*, 310 U.S. at 239. For this

reason, the "default rule is not to admit evidence of wealth." *SEC v. Goldstone*, 2016 WL

3654273, at *12 (D.N.M. June 13, 2016) (excluding "any evidence regarding the Defendants'

wealth").

Accordingly, courts in this district have not hesitated to grant motions *in limine* to

exclude any reference to a party's financial resources. *See Wielgus v. Ryobi Techs., Inc.*, 2012

WL 1853090, at *6 (N.D. Ill. May 21, 2012) (excluding financial evidence and noting that the

danger of unfair prejudice is particularly high where a defendant's financial status is referenced

for the purpose of invoking juror emotions); *French v. Amsleep, Inc.*, 2003 WL 120859, at *1

(N.D. Ill. Jan. 14, 2003) (granting motion to exclude financial status evidence until plaintiff

makes "colorable claim for punitive damages"); *Opio v. Wurr*, 901 F. Supp. 1370, 1375 (N.D.

Ill. 1995) (granting motion *in limine* excluding reference to "wealth, poverty or financial

condition of the decedent" except as proof of "future earnings"); *Cent. Die Casting & Mfg.*, 1998

WL 812558, at *10 (N.D. Ill. Nov. 19, 1998) (finding evidence of defendant's wealth "irrelevant,

immaterial, and unduly prejudicial"); *Townsend v. Benya*, 287 F. Supp. 2d 868, 874 (N.D. Ill.

2003) (granting defendants' motion *in limine* to exclude evidence of indemnification due to

13

potential of prejudicial inference by the jury that defendants have "deep pockets"); *Pucci v. Litwin*, 1993 WL 405448, at *1 (N.D. Ill. Oct. 4, 1993) (granting motion *in limine* to exclude evidence of party's financial status on Rule 403 grounds); *Tessendorf v. First Colony Life Ins. Co.*, 1992 WL 349645, at *7 (N.D. Ill. Nov. 13, 1992) (excluding wealth evidence and finding such evidence irrelevant and prejudicial).

Wealth evidence can also lead to unfair prejudice because juries may "equate wealth with wrongdoing." *Stahl*, 616 F.2d at 31-33 (finding that the government had "impermissibly equate[d] success, affluence and a single minded occupation with one's business affairs with greed and corruption," warranting reversal). Such evidence thus may improperly "lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief*, 519 U.S. at 180; *Gumwood HP Shopping Partners, L.P. v. Simon Prop. Grp., Inc.*, 2016 WL 10706086, at *3 (N.D. Ind. Oct. 28, 2016) (excluding wealth and compensation evidence due to the "danger of unfair prejudice that the jury might find Simon liable based on something other than committing antitrust violations").

**C.    Evidence of Ms. Pramaggiore's Compensation or Financial Position Would Cause Undue Delay, Confuse the Jury, and Waste Time.**

Evidence of Ms. Pramaggiore's wealth and compensation further merits exclusion because it would cause undue delay, confuse the jury, and waste the Court's, parties', and jury's time. *See* Fed. R. Evid. 403. If such evidence were admitted, Ms. Pramaggiore would be compelled to rebut any inferences the jury might draw from it. She would need to address, for example, how her compensation was calculated, how her compensation compared with relevant peers both within the company and without, and the absence of any relationship between her compensation and the alleged crimes. Such argument would needlessly sidetrack the jury, delaying and confusing the primary proceedings with an irrelevant sideshow. *Martinez*, 2016

14

WL 3538823, at *5 (emphasizing the Court's "unwillingness to allow the parties to create unnecessary sideshows and mini-trials on issues of little relevance").

## V.    MOTION *IN LIMINE* NO. 5: DEFENDANTS PRAMAGGIORE AND HOOKER'S MOTION TO EXCLUDE DRAFT STATEMENT WRITTEN BY KEISHA PARKER

Defendants Anne Pramaggiore and John Hooker respectfully move *in limine* for an order excluding any evidence, testimony, or argument concerning the draft introductory remarks written by Keisha Parker about Michael J. Madigan for Ms. Pramaggiore for a September 18, 2012 fundraiser.  *See* Grand Jury Ex. Parker 3 (EXE00348565).  Ms. Pramaggiore is charged in this action, not Ms. Parker.  Therefore Ms. Parker's opinions and beliefs concerning Mr. Madigan are irrelevant.  If admitted, such evidence would seriously prejudice the defense by confusing the proceedings and inviting the jury to improperly conflate Ms. Parker's opinions with Ms. Pramaggiore's.  The Court thus should exclude EXE00348565 and any related evidence, testimony, or argument.

### A.    Background

During Ms. Parker's grand jury testimony on July 27, 2020, the Government introduced Grand Jury Ex. Parker 3 (EXE00348565), a copy of draft remarks for introducing Mr. Madigan at a fundraiser that Ms. Parker wrote and sent to Ms. Pramaggiore on September 14, 2012.  *See* Parker Grand Jury Stmt. at GJ_074-000123; Parker's Grand Jury Test. at GJ_074-00167, 20:10-21.  Defendants therefore anticipates that the Government may seek to introduce this exhibit and related testimony or argument at trial.

### B.    Ms. Parker's Draft Is Irrelevant to the Charges Defendants Are Facing.

Ms. Parker's draft remarks about Mr. Madigan—even if she intended those remarks to be used by Ms. Pramaggiore—are irrelevant because Ms. Parker is not a defendant in this case.  The

15

only persons whose opinions of Mr. Madigan are relevant to the charged offenses are Defendants, because they are the only individuals whose *mens rea* is at issue.

Critically, there is no evidence that Ms. Pramaggiore adopted the opinions expressed in Ms. Parker's draft remarks as her own. At most, the documents and testimony support that Ms. Parker sent her proposed draft to Ms. Pramaggiore. *See* Parker Grand Jury Stmt. at GJ_074-000123; Parker's Grand Jury Test. at GJ_074-00167, 20:10-21; Grand Jury Ex. Parker 3 (EXE00348565). Ms. Pramaggiore did introduce Mr. Madigan at a September 18, 2012 fundraiser. But, no further connection exists to link Ms. Parker's draft to Ms. Pramaggiore's supposed beliefs. There is no evidence that Ms. Pramaggiore read Ms. Parker's draft, no evidence that she agreed with or adopted it, and no evidence that Ms. Pramaggiore delivered it unaltered. Rules 401 and 402 accordingly dictate that such evidence must be excluded. *See* Fed. R. Evid. 401; Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

### C. Even If the Court Found Ms. Parker's Remarks Relevant, They Are Unfairly Prejudicial.

Even if relevant, introducing Ms. Parker's draft remarks would be unfairly prejudicial. Under Rule 403, even relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

Here, there is a serious risk that the jury would conflate Ms. Parker's draft remarks with Ms. Pramaggiore's own opinions about Mr. Madigan, allowing the jury to find her culpable based on *Ms. Parker's* statements, rather than because of the actual facts of the case and testimony presented. *See Old Chief*, 519 U.S. at 180; *Thompson*, 472 F.3d at 456-57. Accordingly, to avert such unfair prejudice, Ms. Parker's draft remarks and any related testimony should be excluded from Ms. Pramaggiore's trial.

## VI. **MOTION *IN LIMINE* NO. 6: DEFENDANTS PRAMAGGIORE AND HOOKER'S MOTION TO EXCLUDE HEARSAY STATEMENTS MADE BY A GOVERNMENT INFORMANT**

Defendants Anne Pramaggiore and John Hooker respectfully move for the exclusion of evidence or argument concerning certain statements made by Fidel Marquez that were recorded by the Government while Mr. Marquez was acting as a Government informant.

The charges in this case include that "[b]eginning no later than in or around 2011, and continuing through in or around 2019 . . . defendants . . . did conspire with each other, Fidel Marquez, and others known and unknown to the Grand Jury . . . ." (Indictment ¶ 2.) However, Mr. Marquez began acting as a Government agent in mid-January 2019. Here, the Government will likely seek to admit portions of recorded conversations involving Mr. Marquez and others which contain statements of purported fact made by Mr. Marquez while he was acting as a Government informant and, thus, were not made in furtherance of the alleged conspiracy. These statements are inadmissible hearsay and should be excluded.

Specifically, the Court should exclude the portions of the following recorded conversations and any related agent notes from evidence and argument:

(1) Recorded Conversation, January 29, 2019 at 1 minute, 3rd video, (Mr. Marquez statement to Defendant John Hooker: "About it. Uh, you know, I've never had to explain, you know. Anne, Anne, for example, Anne approved it. I didn't have to go with her, cuz- . . . It was under her, and Frank was probably the same thing."); *see also* Gov't Tr. - In person (Jan. 29, 2019) at line 23-29;

(2) Recorded Conversation, February 13, 2019 at 13 minutes, 42 seconds (Mr. Marquez statement to Defendant Jay Doherty: "Um, so Anne, you know, this was never, Anne, I never even touched it. She just, she just approved it."); *see also* Gov't Tr. - In person (Feb. 13, 2019) at lines 417-18; and

(3) Recorded Conversation, March 5, 2019 at 8 minutes, 3rd video (Mr. Marquez statement to Joseph Dominguez: "Jay's contract has always been under the CEO. . . . And you, uh, you know you're the one that has to you know sign the single source letter. I want to make sure you know what you're signing. . . . That, that was it, you know, um, all of that, this has been in place for a long time. Frank took care of it. Anne took care of it. I'm not sure if Anne, in her transition, I know

there wasn't much, I mean that's a level of detail that she probably doesn't even remember."; *see also* Gov't Tr. - In person (Mar. 5, 2019) at lines 178-79, 183-85, 193-97.

A.     **Mr. Marquez Was Not a Conspirator in the Alleged Conspiracy at the Time of the Recordings.**

Mr. Marquez served as ComEd's Executive Vice President of Governmental and External Affairs from early 2012 until 2019. Mr. Marquez began cooperating with the Government in connection with the investigation into ComEd and Michael J. Madigan no later than mid-January 2019. After he began cooperating with the Government, Mr. Marquez recorded several conversations he had with others and made numerous statements in those recorded conversations, including those referenced above.

Hearsay is "a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801. "Hearsay is not admissible" unless it is subject to an exception. Fed. R. Evid. 802. While a coconspirator's statements made during the course and in furtherance of the conspiracy are not hearsay, *see* Fed. R. Evid. 801(d)(2)(E), statements by a government cooperator do not fall within that exception because a conspiracy may not be formed between a criminally motivated person and a government agent or informant. *See United States v. Mahkimetas*, 991 F.2d 379, 383 (7th Cir. 1993).

A statement made by a government agent or informant that is not adopted by a co-conspirator is not a statement made in furtherance of the conspiracy.[10] *United States v. Darden*,

_____

[10] Ms. Pramaggiore was not present for any of the conversations at issue in this motion. "The Seventh Circuit's test for adoptive admissions is whether 'the statement was made in the defendant's presence, [whether] the defendant understood the statement, and [whether] the defendant ha[d] the opportunity to deny the statement but did not do so.'" *United States v. Turner*, 2014 WL 4699708, at *4 (N.D. Ill. Sept. 22, 2014) (quoting *United States v. Ward*, 377 F.3d 671, 675 (7th Cir. 2004)). The Seventh Circuit has also separately stated that there must be a "clear manifestation of intent to adopt" the statements at issue in order for them to be admissible as adoptive admissions. *See United States v. Rollins*, 862 F.2d 1282,

70 F.3d 1507, 1530 (8th Cir. 1995) (statements by government informant were inadmissible

under Rule 801(d)(2)(E) "because he was a government informant rather than a co-conspirator at

the time the statements were made and, obviously, the statements were not made in furtherance

of the conspiracy"); *United States v. Smith*, 578 F.2d 1227, 1233 (8th Cir. 1978) (same);

*Mahkimetas*, 991 F.2d at 383; *United States v. Alrub*, 160 F. Supp. 2d 988, 990 n.3 (N.D. Ill.

2001) ("It is well settled that one cannot criminally conspire with a government agent or

informant.").

Mr. Marquez was a Government agent or informant at the time of these conversations,

and thus he could not be a conspirator in the alleged conspiracy so as to allow admission of his

statements under the coconspirator exception to the rule against hearsay. Because the relevant

statements were made *by* a person who was not a member of the conspiracy when the statements

were made, they are not subject to this exception. *See United States v. Ayala*, 601 F.3d 256,

268-69 (4th Cir. 2010) (regarding admissibility under Rule 801(d)(2)(E), "[a]ll that is required is

that a statement be made *by* one of the defendant's coconspirators, not *to* a coconspirator, in the

course and in furtherance of the conspiracy") (emphases added); *see also United States v.*

*Williamson*, 53 F.3d 1500, 1519 (10th Cir. 1995) ("[I]n deciding whether statements are

admissible under Rule 801(d)(2)(E), the appropriate focus is on whether the statements were

'made by' a member of the conspiracy, and not on whether the statements were 'made to' a

member of the conspiracy").

---

1297 n.6 (7th Cir. 1988). Moreover, "'[a]doptive admissions' also cannot be introduced against a
coconspirator through the coconspirator exception to the hearsay rule, Fed. R. Evid. 801(d)(2)(E)."
*United States v. Molina*, 1989 WL 85011, at *2 (N.D. Ill. July 20, 1989); *see also United States v. Nava-*
*Salazar*, 735 F. Supp. 274, 277 (N.D. Ill. 1990).

**B.    Mr. Marquez's Statements Are Also Unreliable and Vague, and Allowing the Jury To Hear Them Would Prejudice Ms. Pramaggiore and Mr. Hooker.**

In addition to being inadmissible hearsay, the statements by Mr. Marquez are unreliable and vague, and allowing the jury to hear them would prejudice Ms. Pramaggiore and Mr. Hooker.  The fact that Mr. Marquez began cooperating with the Government prior to making these statements calls into question the truth and accuracy of his statements in these recordings, because the language he used may have been suggested by the Government or tailored by Mr. Marquez to conform to what he believed the Government wanted to hear.  *See Smith*, 578 F.2d at 1234 (finding that erroneous admission of a cooperating witness's recorded statements that "were made at the suggestion of the police investigators" justified reversing a conviction and ordering a new trial).  Mr. Marquez used ambiguous language in these statements, including that Ms. Pramaggiore "approved it" and "took care of it," without specifying what "it" was with enough detail to allow a factfinder to determine whether he was referring to legal or illegal conduct.  Accordingly, these statements have no probative value.  Allowing the jury to hear these vague and possibly coached statements would be highly prejudicial to Ms. Pramaggiore because it would allow them to assume that the statements referred to illegal conduct.  The statements should also be excluded on this basis.

**VII.    MOTION *IN LIMINE* NO. 7: DEFENDANTS McCLAIN, PRAMAGGIORE, AND HOOKER'S JOINT MOTION TO EXCLUDE EVIDENCE OR ARGUMENT CONCERNING CERTAIN CAMPAIGN CONTRIBUTIONS**

Defendants Michael McClain, Anne Pramaggiore, and John Hooker respectfully move for the exclusion of evidence or argument concerning campaign contributions from ComEd, Exelon, or personnel of ComEd or Exelon to Michael J. Madigan, Friends of Michael J. Madigan, or the Democratic Party of Illinois.  Evidence of these campaign contributions should not be admitted because they are not relevant and would be unduly prejudicial and confusing; the

jury may conflate these legal activities—which are protected by the First Amendment and not

part of the indictment—with the bribery and gratuity allegations that are charged.

> A.      **Evidence of Such Campaign Contributions Is Irrelevant Because the Indictment Charges Illegal Efforts to Influence Madigan.**

Evidence or argument concerning campaign contributions from ComEd, Exelon, or

personnel of ComEd or Exelon to Michael J. Madigan, Friends of Michael J. Madigan, or the

Democratic Party of Illinois is irrelevant, nor are campaign contributions mentioned in the

indictment.  Campaign contributions are legal and protected by the First Amendment.  *See Fed.*

*Election Comm'n v. Cruz*, 142 S. Ct. 1638, 1653 (2022) ("As we have explained, influence and

access 'embody a central feature of democracy—that constituents support candidates who share

their beliefs and interests, and candidates who are elected can be expected to be responsive to

those concerns.' . . . To be sure, the 'line between *quid pro quo* corruption and general influence

may seem vague at times, but the distinction must be respected in order to safeguard basic First

Amendment rights.' . . . And in drawing that line, 'the First Amendment requires us to err on the

side of protecting political speech rather than suppressing it.'") (internal citations omitted); *see*

*also United States v. Martin*, 195 F.3d 961, 966 (7th Cir. 1999) ("the courts have made clear that

criminal inducement of a legislator to take particular action cannot be inferred from the

legislator's acceptance of campaign contributions from interests urging the action . . . .")

(collecting cases); *see also United States v. Allen*, 10 F.3d 405, 410-11 (7th Cir. 1993) ("Money

fuels the American political machine.  Campaigns are expensive, and candidates must constantly

solicit funds. People vote for candidates and contribute to the candidates' campaigns because of

those candidates' views, performance, and promises.  It would be naive to suppose that

contributors do not expect some benefit—support for favorable legislation, for example—for

their contributions.").  Indeed, the Committee comment to the recently revised Seventh Circuit

Pattern Criminal Jury Instructions emphasizes that contributions such as these are lawful: "In a case involving campaign contributions as the alleged thing of value, the parties and the court should consider whether to give an additional instruction *explaining the lawfulness of contributions and distinguishing them from illegal bribes or illegal gratuities.*" Seventh Circuit Pattern Criminal Jury Instructions (updated 2022), Committee Comment to 18 U.S.C. § 666(a)(2) PAYING A BRIBE (emphasis added).

For this reason, any evidence or argument regarding campaign contributions from ComEd, Exelon, or personnel of ComEd or Exelon to Michael J. Madigan, Friends of Michael J. Madigan, or the Democratic Party of Illinois is irrelevant to the allegations in the indictment which concern *illegal* attempts to influence Mr. Madigan. Evidence or argument regarding campaign contributions would only be offered to improperly suggest that the contributions were intended as a form of bribery and/or gratuity for Mr. Madigan as opposed to legal, political speech; but, these were not charged.

**B.     Evidence of Such Campaign Contributions Is Unfairly Prejudicial and Would Confuse the Jury.**

Even if the campaign contributions were relevant, evidence and argument concerning the campaign contributions should be excluded as unfairly prejudicial and confusing for the jury. *See* Fed. R. Evid. 403; *Williams*, 740 F.3d at 314. Evidence or argument concerning the campaign contributions may confuse the jurors because the jury may conflate these legal activities that are protected by the First Amendment—and not part of the indictment—with the bribery and gratuity allegations that are actually charged, including because the Government's proposed jury instructions risk being misinterpreted as encompassing both. *See* Gov't Proposed Jury Instructions, Dkt. 92 at 6, 8 ("Counts Two, Five, Six, and Eight of the indictment charge the

defendants with corruptly offering and agreeing to give things of value.")  There is therefore a risk the jury would convict Defendants based on *legal* efforts to influence Madigan.

In addition, the dollar amount of the campaign contributions makes evidence or argument concerning them especially prejudicial.  Though the dollar amounts were within the limits set by law, a jury may conclude that large dollar amounts of *legal* campaign contributions equate to an improper attempt to influence Madigan.  Evidence or argument concerning these amounts would thus have "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."  *Old Chief*, 519 U.S. at 180.

## VIII. MOTION *IN LIMINE* NO. 8: DEFENDANTS' *UNOPPOSED* JOINT MOTION TO EXCLUDE EVIDENCE OR ARGUMENT CONCERNING THE BURKE FUNDRAISER

Defendants Michael McClain, Anne Pramaggiore, John Hooker, and Jay Doherty respectfully move for the exclusion of evidence or argument concerning a fundraiser for former City of Chicago Alderman Ed Burke, referenced in the recording TP20 Session 15198 (July 28, 2018).  The Government does not oppose this motion.

This Court should not admit evidence of the fundraiser because it is irrelevant, unduly prejudicial, a waste of time, and risks confusing the jury.  If evidence of the fundraiser were admitted, it would connect Defendants to an unrelated matter that is not charged in this case, and creates the risk that the jury will conflate legal activity that is protected by the First Amendment and not part of the indictment with the bribery and gratuity allegations that are charged.

## CONCLUSION

For the foregoing reasons, Ms. Pramaggiore's Consolidated Motions *in Limine* should be granted.

DATED: February 6, 2023        Respectfully submitted,

/s/ *Scott R. Lassar*

Scott R. Lassar
Daniel C. Craig
Jennifer M. Wheeler
Emily R. Woodring
Joan E. Jacobson
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036
slassar@sidley.com
dcraig@sidley.com
jwheeler@sidley.com
ewoodring@sidley.com
joan.jacobson@sidley.com

*Attorneys for Defendant Anne Pramaggiore*