IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> MICHAEL McCLAIN, ANNE PRAMAGGIORE, JOHN HOOKER, AND JAY DOHERTY, | Case No. 20 CR 812 <br><br> Judge Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

### I. BACKGROUND

In this case, the Government has charged the Defendants with violating and conspiring to violate 18 U.S.C. § 666 by corruptly providing things of value to Michael Madigan ("Madigan"), former Speaker of the Illinois House of Representatives, with "intent to influence or reward" in connection with an exercise of his official duties. In carrying out the conspiracy, the Indictment charges that, between 2012 and 2019, the Defendants, who were employees and agents of Commonwealth Edison Company ("ComEd"), conspired to bribe Madigan by "arrang[ing] for various associates of [Madigan], including [his] political allies and individuals who performed political work for [him], to obtain jobs, contracts, and monetary payments associated with those jobs and contracts from ComEd and its affiliates, even in instances where such associates performed little or no work that they were purportedly hired to perform for

ComEd." (Dkt. 1 at 12-13.) Specific legislation, that benefited ComEd and was passed by the Illinois House during the period in question is identified in the Indictment.

In support of its case, the Government has tendered Dick W. Simpson, Professor Emeritus of the University of Illinois at Chicago, who serves as the former head of its Political Science Department and its Director of Undergraduate Studies in Political Science, as an expert witness. Professor Simpson proposes to define a "political machine," for example:

- "In a political machine, . . . what primarily motivates the voter and political worker is what the voter and political worker is getting in return for his/her vote, such as a job."

- "In turn, public officials in the machine have a need to award material incentives (such as jobs) to precinct captains, political allies, and the like in order to maintain power."

(Simpson Expert Disclosure, Dkt. 139, Ex. A at 5.) He will also give a history of the political machine in Chicago, for example:

- "The Chicago political machine has dominated Democratic politics in Chicago since 1933 and continues to do so."

- "Since the Shakman decrees went into effect in the 1970s and 1980s, the [Chicago] political machine has made efforts to circumvent the controls on the patronage system."

*Id.*

The Defendants seek to exclude Professor Simpson's testimony. They contend that his testimony is unreliable, will not assist the trier of fact, and any probative value is outweighed by prejudice. In opposition to the Motion, the Government says that the topics Professor Simpson will address are relevant to the trial and will explain matters that would be unfamiliar to the jury.

### III. LEGAL STANDARD

Expert testimony is permitted under Federal Rule of Evidence 702. The Court considers whether the testimony is based on "sufficient facts or data . . . [and] is the product of reliable principles and methods . . . [which have been] applied to . . . the facts of the case." FED. R. EVID. 702. The Court must conclude that the testimony is relevant such that it will "will assist the trier of fact to understand the evidence or to determine a fact in issue." *Myers*, 629 F.3d at 644. "The party seeking to offer expert testimony has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence." *Rasmusen v. White*, 970 F.Supp. 2d 807, 813 (N.D. Ill. 2013).

### V. DISCUSSION

The Court grants the Motion.

According to the Government, Professor Simpson will explain to the jury why political workers, such as precinct committeemen

and precinct captains respond to incentives to work to get out the vote and that those incentives are the expectation of material benefits. The Court does not find that the subject of this proposed testimony is so enigmatic to require expert testimony.

Neither does the Court see how testimony of the history of the Chicago Machine helps the jury determine a fact at issue in this present case. The Court does see, however, how emphasizing the history of corruption and election fraud that marked the early years of the machine could prejudice Defendants. The Government states that the testimony is relevant regarding incentives to get out the vote because it will allow the jury to appreciate the importance to Madigan for his friends and political aides to receive payments from ComEd even though they performed little or no work for ComEd. The Government does not explain how Professor Simpson will convey this to the jury without having reviewed the records or conducted any investigation into the facts of this case.

Nor does it convince the Court that Professor Simpson's testimony is the product of reliable principles or methods. An extensive publishing record is not enough. Although methods vary across fields of expertise, from no field can an expert "waltz into the courtroom and render opinions" not based upon a recognized method. *Kirk v. Clark Equipment Co.*, 991 F.3d 865, 873-74 (7th Cir. 2021) (cleaned up).

4

The theory of the Government is that the reduction of patronage jobs brought about by the diminishing power of the Chicago Machine forced the political leaders like Madigan to look to the private sector to replace those jobs that used to be available through political patronage. However, the Government does not need an expert to explain this phenomenon to the jury because it can use the Defendants' own words to do so. The Government gives four examples of statements made by Defendants, the significance of which, it claims, the jury will not understand without Professor Simpson's expert opinion:

- McClain replied, "So, um, they're all former ward committeemen and aldermen. [Individual 23W-1], former alderman. [Individual 13W-1], and this either was number one, two, or three depending on the year, his [Madigan's] best precinct worker. He actually trains other precinct workers, so—" Marquez asked, "Meaning, mean [Individual 13W-2]?" McClain said, "[Individual 13W-2]."

- . . . from even the seventies [1970s] when, when, you know, he [Madigan] had to name people be meter readers, right. I mean, it's, uh, the old fashioned patronage system and . . ." The New CEO interjected, "Mmhmm." McClain continued, ". . . uh, ComEd played it like, um, uh, he . . ." The New CEO stated, "Like a chip." McClain stated, "You're a ward committeeman and, uh, and we have seven meter readers in your, ward and you can name four of them, [McClain laughs] you know." The New CEO responded "Mm-hmm." McClain continued, "And that's just the way ComEd was for, uh, years, and then, as, as we've kind of morphed into, um, not being able to do that.

- And a lot of people in his ward, um, we [ComEd] morphed into, 'How else can we help you?'" The New CEO stated, "Right." McClain reiterated, "Right."

- Because we can't really do meter readers, we don't have 'em anymore. We don't—" The New CEO said, "Yeah." McClain continued, "—linemen, there's, there's no one from the 13th Ward that'd linemen. So, what we have is, um, uh, [name redacted], uh, I meant to say, sorry, [Individual 23W-1]. Used to be an Alderman, um, next to, and his son is chairman of the revenue committee. Um, and, uh, [Individual 13W-2], who's a top three precinct committeeman. Uh, and, uh, they're all, they're all good solid people."

The jury will not need an expert witness to interpret these remarks because the Defendants have done so themselves. For example, it is clear from the context that Mr. McClain and the CEO understand that the ward leaders are important in the training of other campaign workers. McClain also explained that the elimination of meter readers took jobs away from Mr. Madigan and the other ward committeemen that were not and would not be replaced by other jobs available at ComEd that a political operative would be competent to perform. These statements will be easily understood by the jury, especially with the Government being able to give its own spin to them. The benefits from having Professor Simpson's expert opinion to reinforce the Government's take would be mere corroboration of other witnesses, or, as expressed by the Seventh Circuit, "to put an 'expert gloss' on the conclusion the jurors are capable of seeing for themselves." *United States v. Christian,* 673 F3d 702,

710 (7th Cir. 2012). A map of the City of Chicago, and the statutory description of a committeeman and precinct captain can be made by stipulation or judicial notice.

## VI. CONCLUSION

For the reasons stated herein, Defendants' Motion to Exclude the expert testimony of Professor Simpson is granted [130].

**IT IS SO ORDERED.**

                                        Harry D. Leinenweber, Judge
                                        United States District Court

Dated: 3/8/2023