**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 20 CR 812 |
| | ) | |
| MICHAEL McCLAIN, et al. | ) | Honorable Harry D. Leinenweber |
| | ) | |

## DEFENDANTS' JOINT SUPPLEMENTAL JURY INSTRUCTIONS

Based on the evidence offered during the Government's case-in-chief, Defendants Michael McClain, Anne Pramaggiore, John Hooker, and Jay Doherty (collectively, "Defendants"), through their undersigned counsel, respectfully request that the Court give the following additional jury instructions for the reasons described herein. This submission supplements Defendants' Proposed Jury Instructions (Dkt. 140).

      You heard evidence concerning codes of conduct and compliance policies issued by Exelon.  Evidence that a defendant violated a corporate code of conduct or compliance policy is not, standing alone, sufficient to convict a defendant.  A company's codes of conduct and compliance policies are not the same as federal criminal law, so even if you were to find that a defendant violated a code of conduct or compliance policy, that does not necessarily mean that there was a violation of the criminal law.  You must apply the law that I give you and the government must prove violations of federal law beyond a reasonable doubt.

DEFENDANTS INSTRUCTION NO. 22.1 (ADDITIONAL)[1]
Order at 3–4, *United States v. Smith*, Case No. 19-cr-00669 (N.D. Ill. July 10, 2022), Dkt. 607 (attached hereto as Exhibit G).

      As this Court recognized, corporate compliance policies are "not equivalent to a criminal code." (Trial Tr. at 3148:4-8.)  The Government has presented evidence of the Exelon Code of Conduct, which is different from and broader than criminal law. (*See, e.g.*, Gov. Ex. 739.)  To prevent prejudice and confusion, the jury should be instructed that a violation of the Code of Conduct is not necessarily a violation of the law.  Fed. R. Evid. 403.  Similar instructions are often given in cases in which compliance policies are introduced.  *See, e.g.*, Order at 3–4, *Smith*, Case No. 19-cr-00669.

---

[1] Defendants request that this instruction be given following Defendants Instruction No. 22. (Dkt. 140 at 46.)

You have heard evidence concerning campaign contributions made by ComEd and others to various public officials. This evidence was introduced to show relationships. There are no allegations that such campaign contributions were illegal or intended to bribe Michael Madigan. The campaign contributions may not be considered by you as evidence of a crime.

DEFENDANTS' INSTRUCTION NO. 30.3 (ADDITIONAL)[2]

During the course of the Government's case, it introduced evidence of campaign contributions and intimated that such campaign contributions could form the basis of the charges against Defendants. (*See, e.g.*, Trial Tr. at 2232:16-2233:13 (asking when campaign contributions were made in relation to the negotiations for FEJA).) As explained below, campaign contributions cannot form the basis of any charge because this theory of the offense is not alleged in the indictment, and the Government has not alleged an explicit *quid pro quo*, as is required under the law for violations of 18 U.S.C. § 666 involving campaign contributions. The above instruction should be given to the jury to avoid a substantial error of law.

Including campaign contributions as part of a substantive offense would be a constructive amendment of the indictment. *See United States v. Leichtnam*, 948 F.2d 370, 379 (7th Cir. 1991). The indictment in this case makes no mention of campaign contributions. (*See generally* Dkt. 1.) And the Government has previously represented that the charges against Defendants do not include campaign contributions. (*See* Dkt. 54, Gov.'s Resp. Mot. Dismiss at 38 ("The illegal conduct alleged in the indictment . . . did not include campaign contributions made by ComEd."); Dkt. 147, Gov.'s Consolidated Response to Defs.' Mtns. *in Limine* and Reply in Support of *Santiago* Mtn. at 55 ("The government does not dispute that campaign contributions generally are protected by the First Amendment," and "campaign contributions and fundraising efforts designed to curry favor with Madigan may have been lawful standing alone.").)

Moreover, the Government has not satisfied the legal burden necessary to prove bribery involving campaign contributions. As this Court recognized, if campaign contributions are considered evidence of a crime, the relevant standard is an *explicit quid pro quo*. As the Government acknowledged, campaign contributions are legal and protected by the First Amendment. (Dkt. 147, Gov.'s Consolidated Response to Defs.' Mtns. *in Limine* and Reply in Support of *Santiago* Mtn. at 55). *See also, e.g.*, *Fed. Election Comm'n v. Cruz*, 142 S. Ct. 1638, 1653 (2022); *United States v. Martin*, 195 F.3d 961, 966 (7th Cir. 1999); *United States v. Allen*, 10 F.3d 405, 410-11 (7th Cir. 1993). In *McCormick v. United States*, the Supreme Court cautioned against criminalizing the solicitation of campaign contributions, because doing so "would open to prosecution not only conduct that has long been thought to be well within the law but also conduct that in a very real sense is unavoidable . . . ." 550 U.S. 257, 272 (1991). The Supreme Court, accordingly, required an explicit *quid pro quo* for extortion charges based on campaign contributions. *Id.* at 273-74. The Supreme Court did not limit its concerns to the particular extortion statute. *United States v. Donagher*, 520 F. Supp. 3d 1034, 1043 (N.D. Ill.

---

[2] Defendants request that this instruction be given following Defendants Instruction No. 30.2. (Dkt. 140 at 64.)

2021). "Instead, what animated the Court's analysis was concern about criminalizing everyday interactions between politicians and their constituents" and "courts have recognized that the giving of campaign contributions 'implicates core First Amendment rights.'" *Id.* (collecting cases); *see also United States v. Benjamin*, No. 21-CR-706 (JPO), 2022 WL 17417038, at *8 (S.D.N.Y. Dec. 5, 2022) (granting motion to dismiss where the Government was "not able to rebut" that "'proof of an express promise is necessary when the payments are made in the form of campaign contributions'") (citing *United States v. Ganim*, 510 F.3d 134, 142 (2007) (Sotomayor, J.)).

Indeed, this Court recognized this higher standard in its ruling on the pre-trial motions *in limine*. (Dkt. 161, Motions *in Limine* Rulings at 4 ("While campaign contributions may be protected by the First Amendment, they may constitute illegal conduct under certain circumstances. *It is illegal, for example, to tie a campaign contribution to a promise to vote in a certain way.*") (emphasis added).) But, the Government has neither alleged nor proven the existence of an explicit *quid pro quo*. Thus, campaign contributions cannot form the basis for the charges in this case.

Accordingly, a limiting instruction is necessary to prevent the jury from erroneously considering the campaign contributions as part of the bribe, in contravention of the indictment and governing law. The jury may conflate these legal activities—which are protected by the First Amendment and not part of the indictment—with the bribery and gratuity allegations that are charged. Notably, the Committee Comment to the Seventh Circuit Pattern Criminal Jury Instructions specifically recognizes that campaign contributions are lawful and advises considering an instruction such as the one Defendants propose: "In a case involving campaign contributions as the alleged thing of value, the parties and the court should consider whether to give an additional instruction *explaining the lawfulness of contributions* and distinguishing them from illegal bribes or illegal gratuities." Seventh Circuit Pattern Criminal Jury Instructions (updated 2022), Committee Cmt. to 18 U.S.C. § 666(a)(2) PAYING A BRIBE (emphasis added).

4

DATED: April 18, 2023 　　　　　　　　　　　Respectfully submitted,

/s/ *Patrick J. Cotter*
Patrick J. Cotter
GREENSFELDER, HEMKER & GALE, P.C.
200 West Madison Street, Suite 3300
Chicago, IL 60606
Telephone: (312) 345-5088
pcotter@greensfelder.com

David P. Niemeier
GREENSFELDER, HEMKER & GALE, P.C.
10 South Broadway, Suite 2000
St. Louis, MO 63102
Telephone: (314) 241-9090
dpn@greensfelder.com

*Attorneys for Defendant Michael McClain*

/s/ *Scott R. Lassar*
Scott R. Lassar
Daniel C. Craig
Jennifer M. Wheeler
Emily R. Woodring
Joan E. Jacobson
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036
slassar@sidley.com
dcraig@sidley.com
jwheeler@sidley.com
ewoodring@sidley.com
joan.jacobson@sidley.com

*Attorneys for Defendant Anne Pramaggiore*

/s/ *Jacqueline S. Jacobson*
Michael D. Monico
Barry A. Spevack
Jacqueline S. Jacobson
Ryan W. Mitsos
MONICO & SPEVACK
53 West Jackson Blvd., Suite 1315
Chicago, IL 60604
Telephone: (312) 782-8500
mm@monicolaw.com
bspevack@monicolaw.com
jjacobson@monicolaw.com
rmitsos@monicolaw.com

Susan M. Pavlow
LAW OFFICES OF SUSAN M. PAVLOW
53 West Jackson Boulevard
Suite 1215
Chicago, IL 60604
Telephone: (312) 322-0094

*Attorneys for Defendant John Hooker*

/s/ *Gabrielle R. Sansonetti*
Gabrielle R. Sansonetti
LAW OFFICE OF GABRIELLE R. SANSONETTI
53 West Jackson Blvd., Suite 1062
Chicago, Illinois 60604
Telephone: (312) 588-1281
Direct: (773) 716-6117
Facsimile: (773) 277-7334
gabrielle@Sansonetti-law.com

Michael P. Gillespie
GILLESPIE AND GILLESPIE
53 West Jackson Blvd., Suite 1062
Chicago, IL 60604
Telephone: (312) 588-1281
michael@gillespieandgillespielaw.com

*Attorneys for Defendant Jay Doherty*