UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 20 CR 812 |
| | ) | |
| MICHAEL McCLAIN, et al. | ) | Honorable Harry D. Leinenweber |
| | ) | |

### DEFENDANTS' JOINT MODIFICATION TO PROPOSED JURY INSTRUCTIONS (DKT. 140)

Based on the evidence adduced during the Government's case-in-chief, Defendants Michael McClain, Anne Pramaggiore, John Hooker, and Jay Doherty jointly request the following modifications to the jury instructions. This submission modifies Defendants' Proposed Jury Instructions (Dkt. 140).

**I.      The Bribery Counts Should Be Limited to Specific Legislation.**

In both the Indictment and in its opening statement, the Government raised three specific pieces of legislation that passed the Illinois General Assembly between 2011 and 2019: EIMA, SB 9, and FEJA. (Indictment at 7 ¶ 1(o)-(q); Trial Tr. 276:18-277:25 (EIMA); *id.* at 279:6-17 (SB 9); *id.* at 279:18-280:6 (FEJA).) Throughout this trial, the Government has made clear that its theory of the bribery is based upon these three pieces of legislation. Indeed, the Government said in its opening statement that "these *three pieces of legislation* and ComEd's legislative agenda is why the defendants conspired to bribe Madigan." (Trial Tr. at 280:21-23 (emphasis added).)

As described in Defendants' Appendix in Support of its Jury Instructions, it is critical that the jury instructions be tailored to the Indictment and to the evidence actually adduced at trial. (*See* Dkt. 140 at Appendix 1–3 (citing *Stirone v. United States*, 361 U.S. 212, 217-18 (1960);

*United States v. Remsza*, 77 F.3d 1039, 1043 (7th Cir. 1996); *United States v. Leichtnam*, 948 F.2d 370, 377-79 (7th Cir. 1991)).) Accordingly, the phrase "specific legislation, namely EIMA, SB 9, and FEJA" must be used in place of the Government's proposed phrase "some business, transaction, or series of transactions of government" in order to prevent the jury from convicting on the basis of conduct not charged or proved. (Dkt. 140 at Appendix 3-4.)

## II.     References to Reward Should Be Stricken.

The federal-programs bribery statute prohibits giving a thing of value corruptly with the intent to influence *or reward* a public official "in connection with any business, transaction, or series of transactions" of state government.[1]  18 U.S.C. § 666(a)(2).  Although the indictment charges Defendants with both intending to influence and reward Mr. Madigan, there has been no evidence presented at trial that any actions were taken with the intent to *reward* Mr. Madigan, which the Court's prior ruling found could violate the statute under a "gratuity" theory.  (*See* Dkt. 83, Order on Mot. Dismiss at 11 (defining an "illegal gratuity" as "merely a reward for some future act that that public official will take (and may already have determined to take), or for a past act that he has already taken").)  Specifically, Mr. Marquez, who cooperated with the Government and testified pursuant to his plea deal, testified only that he took actions with the intent to *influence* Mr. Madigan to refrain from taking actions to hurt ComEd in the future.

---

[1] As explained in greater detail in Defendants' Motion to Dismiss the Indictment, Defendants maintain that Section 666 criminalizes *only* bribery offenses, not gratuities.  (Dkt. 46 at 20-22.)  Defendants recognize that this Court has rejected this argument.  (Dkt. 83 at 14-15.)  However, it is not necessary to resolve whether the statute criminalizes gratuities because no evidence of any intent to reward was presented at trial, so there is no need to construe that provision of the statute.

Mr. Marquez said nothing about seeking to *reward* Mr. Madigan for or because of some particular act Mr. Madigan performed or was expected to take.[2]  For example:

```
 7 As a general matter, how did you react to any
 8 requests Mr. McClain made on behalf of Mr. Madigan that were
 9 sent to you?
10 A. My reaction was to certainly put them with a high priority
11 and act on them with a sense of urgency.
12 Q. Okay. Did you try to fulfill them when you could?
13 A. Yes.
14 Q. Why?
15 A. Because I knew, one, they were coming from Michael
16 Madigan; and, two, if they weren't fulfilled, I was concerned
17 about the reaction not fulfilling them would cause.
18 Q. And what type of reaction were you most concerned about?
19 A. I was most concerned about Michael Madigan being
20 negatively disposed towards ComEd.
21 Q. And ComEd's legislative agenda?
22 A. Yes.
```

(Trial Tr. at 1874:7-22.)

```
23 Q. And what did you plead guilty to in this case?
24 A. I pled guilty to conspiracy to commit bribery.
25 Q. And was that to try and influence Madigan's legislative
 1 decision-making?
 2 A. Yes.
 3 Q. Through giving benefits to Mr. Madigan?
 4 A. Yes.
```

(*Id.* at 1874:23-1875:4.)

```
16 Q. Please explain.
17 A. Following the previous email, I did contact Stacy O'Brien,
18 explained what the situation was describing the deficit in
19 hours with Reyes Kurson. She indicated that they would work
20 to make up those hours. And then I relayed that information
21 to Mike McClain.
22 Q. And why were you doing that?
23 A. Why was I --
24 Q. Why were you following up with Stacy O'Brien?
25 A. Because Stacy -- I wanted the law department to follow up
 1 on the hours that they had agreed to with Reyes Kurson.
 2 Q. And what was your intention behind making sure that
```

---

[2] The only mentions of "reward" in Mr. Marquez's testimony are in reference to the crime with which he was charged. (Trial Tr. at 1794:3-4, 17-18.) However, when asked what crime he pled guilty to "[i]n layman's terms," Mr. Marquez responded that he conspired to "commit bribery." (*Id.* at 5-6.)

3

```
 3  happened?
 4  A. Making sure that this did not become a concern with
 5  Michael Madigan and then negatively affect ComEd in the
 6  legislation in Springfield.
```

(*Id.* at 2073:16-2074:6.)

```
14 Q. You didn't think that by hiring these people, that was
15 going to cause Madigan to do something to help ComEd get bills
16 passed, correct?
17 A. There was no guarantee.
18 Q. There's no guarantee, and you didn't think he would?
19 A. Again, not doing it would have -- would have been -- would
20 have caused us harm, I believed.
21 Q. That was your belief?
22 A. Correct.
```

(*Id.* at 2346:14-22.)

There is no evidence that Mr. Marquez (or any other witness or individual) understood any hires to be a reward for some action Mr. Madigan had taken or was expected to take. Nor did any document or recording in evidence suggest an intent by ComEd or any Defendant to reward Mr. Madigan for or because of some particular act by making hires. In the absence of any evidence of an intent to *reward* Mr. Madigan in connection with any business, transaction, or series of transactions of Illinois government, the jury instructions must be amended to remove reference to an intent to "reward" throughout.

**III.   A *Quid Pro Quo* Instruction Should Be Given on the Intent-to-Influence Counts.**

Furthermore, because only the intent-to-influence (*i.e.*, bribery) charges remain, the Government must prove a *quid pro quo* beyond a reasonable doubt. In ruling on Defendants' Motion to Dismiss, this Court held that a *quid pro quo* was "sufficient, but not necessary" under Section 666 because the statute "encompasses *both* illegal gratuities and bribery." (Dkt. 83, Order on Mot. Dismiss at 12-13 (emphasis added).) Put another way, the Court held that *bribery* requires a *quid pro quo* but gratuities do not, and that because the statute prohibits both bribery and gratuities, a *quid pro quo* is not necessary. (*Id.*; *see also id.* at 11 (acknowledging the

4

Supreme Court's statement at "only a bribe [§ 201(b)] requires proof of a *quid pro quo*").)³ But where, as here, the Government pursues only a bribery theory at trial, the *quid pro quo* requirement applies. (*See* Dkt. 46-1, Order on Jury Instructions at 4–6, *United States v. Tamras-Martin*, 18-CR-267-2 (N.D. Ill. Feb. 17, 2019) (holding that there is no basis to interpret "corruptly with intent to influence" differently from the identical language in the federal bribery statute, 18 U.S.C. § 201(b).) Accordingly, the Court should adopt jury instructions for the Section 666 counts that reflect that the Government must prove a *quid pro quo* beyond a reasonable doubt. In other words, the instructions should reflect that the Government must prove "a specific intent to give . . . something of value *in exchange* for an official act." *United States v. Sun-Diamond Growers of Cal.*, 526 U.S. 398, 404-05 (1999).

For this reason, in addition to those previously set forth (*see* Dkt. 140 at 55, 59, Appendix 10–11), Defendants respectfully request that the Court give the following already-proposed instruction as part of Instruction Nos. 26 and 28: The person or defendant "acts corruptly, that is with the specific intent to give something of value in exchange for an exercise of an official duty."

---

³ The Committee on Federal Criminal Jury Instructions of the Seventh Circuit reinforced this understanding in its recent amendments to the Seventh Circuit Pattern Jury Instructions. The Committee comments on the supplemental instruction for 18 U.S.C. § 666(a)(2) provide that, "[a]lthough Seventh Circuit opinions have stated, in broad terms, that a specific *quid pro quo* is not required under § 666(a), . . . those cases involved the government's pursuit of a 'reward' theory as well. It is not clear that the Seventh Circuit has directly answered whether a case presenting only an intent to 'influence' theory requires a *quid pro quo*." Seventh Circuit Pattern Criminal Jury Instructions (updated 2022), Committee Cmt. to 18 U.S.C. § 666(a)(2) PAYING A BRIBE.

DATED: April 19, 2023                                                  Respectfully submitted,

/s/ *Patrick J. Cotter*                                                      /s/ *Scott R. Lassar*
Patrick J. Cotter                                                              Scott R. Lassar
GREENSFELDER, HEMKER & GALE, P.C.        Daniel C. Craig
200 West Madison Street, Suite 3300                         Jennifer M. Wheeler
Chicago, IL 60606                                                         Emily R. Woodring
Telephone: (312) 345-5088                                         Joan E. Jacobson
pcotter@greensfelder.com                                        SIDLEY AUSTIN LLP
                                                                                       One South Dearborn
David P. Niemeier                                                     Chicago, IL 60603
GREENSFELDER, HEMKER & GALE, P.C.        Telephone: (312) 853-7000
10 South Broadway, Suite 2000                                Facsimile: (312) 853-7036
St. Louis, MO 63102                                                    slassar@sidley.com
Telephone: (314) 241-9090                                         dcraig@sidley.com
dpn@greensfelder.com                                            jwheeler@sidley.com
                                                                                       ewoodring@sidley.com
*Attorneys for Defendant Michael McClain*            joan.jacobson@sidley.com

*Attorneys for Defendant Anne Pramaggiore*

/s/ *Jacqueline S. Jacobson*                                     /s/ *Gabrielle R. Sansonetti*
Michael D. Monico                                                   Gabrielle R. Sansonetti
Barry A. Spevack                                                       LAW OFFICE OF GABRIELLE R.
Jacqueline S. Jacobson                                            SANSONETTI
Ryan W. Mitsos                                                         53 West Jackson Blvd., Suite 1062
MONICO & SPEVACK                                              Chicago, Illinois 60604
53 West Jackson Blvd., Suite 1315                           Telephone: (312) 588-1281
Chicago, IL 60604                                                      Direct: (773) 716-6117
Telephone: (312) 782-8500                                      Facsimile: (773) 277-7334
mm@monicolaw.com                                             gabrielle@Sansonetti-law.com
bspevack@monicolaw.com
jjacobson@monicolaw.com                                   Michael P. Gillespie
rmitsos@monicolaw.com                                      GILLESPIE AND GILLESPIE
                                                                                    53 West Jackson Blvd., Suite 1062
Susan M. Pavlow                                                     Chicago, IL 60604
LAW OFFICES OF SUSAN M. PAVLOW          Telephone: (312) 588-1281
53 West Jackson Boulevard                                     michael@gillespieandgillespielaw.com
Suite 1215
Chicago, IL 60604                                                      *Attorneys for Defendant Jay Doherty*
Telephone: (312) 322-0094

*Attorneys for Defendant John Hooker*